UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
:
UNITED STATES OF AMERICA :
:
v. :
: Case No. 16-cr-00776 (VEC)
ALAIN KALOYEROS, et al., :
:
Defendants. :
:
---------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT ALAIN KALOYEROS'
<u>MOTION FOR A BILL OF PARTICULARS</u>**

Michael C. Miller
Jeffrey A. Novack
Katherine M. Dubyak
David B. Hirsch
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

*Counsel for Alain Kaloyeros*

Dated: May 19, 2017

Defendant Alain Kaloyeros ("Dr. Kaloyeros") respectfully submits this memorandum of law, together with the Declaration of Michael C. Miller ("Miller Decl."), in support of his motion for a bill of particulars.

## I. INTRODUCTION

The Government began this case with the promise that it would show "in gory detail" how "companies got rich and the public got bamboozled."[1] That promise goes unrealized in its Indictment.[2] The Indictment fails to provide critical elements of the Government's wire fraud and wire fraud conspiracy case, including: (1) the specific allegedly false statements that were made; (2) the specific wires that were transmitted; and (3) the property that was obtained. Moreover, it makes open-ended allegations of "other" unidentified co-conspirators and suggests that there is "other" unalleged conduct at issue.

More is needed to enable Dr. Kaloyeros to prepare his defense, avoid surprise at trial, and afford Dr. Kaloyeros constitutional protection against double jeopardy. This Court should order particularization of the alleged "other" co-conspirators and the alleged fraud itself.

## II. BACKGROUND

On November 22, 2016, the Government filed a 14-count Indictment against Dr. Kaloyeros and seven co-defendants (the "Original Indictment" or "Orig. Ind."). [Docket No. 49]. Three counts—Counts 1, 3, and 4—pertained to Dr. Kaloyeros.

---

[1] Press Conference, United States Attorney for the Southern District of New York (Sept. 22, 2016).

[2] The "Indictment" refers to the Superseding Indictment filed May 11, 2017. [Docket No. 162].

Broadly, these counts alleged that Dr. Kaloyeros worked with government cooperator Todd Howe "to secretly rig the bidding process for State contracts" in connection with requests for proposal ("RFPs") issued in Syracuse and Buffalo. Orig. Ind. ¶ 1. The Original Indictment claimed that Dr. Kaloyeros and Howe "tailor[ed]" the RFPs to favor particular developers—the "Syracuse Developer" and the "Buffalo Developer." *Id*. ¶ 24. In Count 1, Dr. Kaloyeros was charged with a conspiracy to commit wire fraud based on both the Syracuse and Buffalo RFP processes. *Id*. ¶¶ 35–37. In Count 2, Dr. Kaloyeros was charged with wire fraud based on the Syracuse RFP. *Id*. ¶¶ 38–39. In Count 4, Dr. Kaloyeros was charged with wire fraud based on the Buffalo RFP. *Id*. ¶¶ 42–43. The Original Indictment did not, however, detail how the bidding process was tailored. It also left open the notion that there were "other" unidentified co-conspirators and suggested there was "other" unalleged conduct at issue. *Id*. ¶¶ 25, 35, 36.

On April 28, 2017, counsel for Dr. Kaloyeros wrote the Government requesting particularization of the Original Indictment.[3] The letter requested particulars for:

1. Paragraph 13

    a. Identify with particularity the basis for the allegation that the Buffalo Developer received a contract to build a manufacturing plant "as a result of its position as a preferred developer[.]"

2. Paragraph 22

    a. Identify with particularity the basis for the allegation that Howe and Dr. Kaloyeros "devised a plan to secretly rig" the bidding process.

    b. Identify with particularity the rules governing the bidding processes that Howe and Dr. Kaloyeros allegedly rigged.

    c. Identify with particularity the basis for the allegation that they did so in exchange for payments to Howe.

---

[3] A copy of that letter is attached to the Miller Decl. as Exhibit A.

   d.  Identify with particularity the alleged payments to Howe.

3.  Paragraph 23

   a.  Identify with particularity the basis for the allegation that Howe and Dr. Kaloyeros pre-selected the Syracuse Developer and the Buffalo Developer.

   b.  Identify with particularity the basis for the allegation that this pre-selection was related to contributions to the Governor and payments to Howe.

   c.  Identify with particularity the alleged contributions to the Governor.

   d.  Identify with particularity the basis for the allegation that these contracts "were particularly lucrative."

   e.  Identify with particularity the basis for the allegation that the Syracuse Developer and the Buffalo Developer's status as Preferred Developers entitled them to future contracts without any additional competitive bidding.

4.  Paragraph 24

   a.  Identify with particularity the basis for the allegation that information was provided to the Syracuse Developer and the Buffalo Developer, that the information was secret, what information was provided, who provided it, when it was provided, who was aware of it being provided, and that it was provided to no other developers.

   b.  Identify with particularity the basis for the allegation that the RFPs were "secretly tailor[ed]" to favor the Syracuse Developer and the Buffalo Developer and all the ways in which they were allegedly tailored.

5.  Paragraph 25

   a.  Identify with particularity the basis for the allegation that the defendants "deceived and concealed material information from Fort Schuyler and its Board of Directors" and how they allegedly carried out this scheme. Identify with particularity the basis for the allegation that Dr. Kaloyeros "represented to Fort Schuyler that the bidding processes for the Syracuse RFP and Buffalo RFP were fair, open, and competitive."

   b.  Identify with particularity the basis for the allegation that Dr. Kaloyeros and "Howe had predetermined that the Syracuse Developer would be

awarded the Syracuse RFP and the Buffalo Developer would be awarded the Buffalo RFP."

6. Counts One (Paragraphs 35–37), Two (Paragraphs 38–39), and Four (Paragraphs 42–43)

   a. Identify with particularity the property of which the defendants allegedly deprived Fort Schuyler Management Corporation.

   b. Identify with particularity the identities of the alleged unnamed co-conspirators. If you are unaware of an unnamed co-conspirator's identity, state the evidentiary basis for alleging the unnamed co-conspirator's involvement.

   c. Identify with particularity the wire transmissions in interstate and foreign commerce.

On May 10, 2017, the Government responded to Dr. Kaloyeros' letter declining to provide a bill of particulars (the "May 10 Letter").[4] With respect to request No. 6(b) above, for particularization of unindicted co-conspirators, the Government asserted that it was not required to identify unindicted co-conspirators at this time. With respect to request 6(c), for particularization of the wires at issue, the Government asserted that it would it would disclose this material "sufficiently in advance of trial." With respect to the remaining requests, the Government asserted that no particulars were warranted because the requests sought an improper preview of the Government's case and, in any event, the Original Indictment, the previously filed Complaint, and the available discovery provided "sufficient information." With respect to discovery, the Government "refer[red]" Dr. Kaloyeros to the communications and records of two individuals and 11 entities that employ hundreds of individuals. The Government offered as non-exhaustive examples of the relevant discovery over 700,000 pages within the approximately 1.3 million documents it has produced.

---

[4] A copy of that letter is attached to the Miller Decl. as Exhibit B.

On May 11, 2017, the Government filed a superseding indictment (the "Indictment" or "Ind."). [Docket No. 162]. The Indictment adds an additional count against other Defendants, but largely tracks the Original Indictment with respect to Dr. Kaloyeros.

On May 12, 2017, counsel for Dr. Kaloyeros wrote a second letter to the Government.[5] That letter reiterated Dr. Kaloyeros' original request for particulars, requested that the Government provide a more targeted listing of the relevant discovery, and demanded additional particulars based on new allegations in the Indictment. Specifically, the letter requested that the Government identify the parties to, timing, and substance of the e-mails and telephone calls with individuals located in Manhattan, New York that are alleged in paragraph 26 of the Indictment.

On May 15, 2017, the Government once again declined to offer these particulars in connection with a response to Dr. Kaloyeros' discovery requests.[6]

On May 16, 2017, counsel for Dr. Kaloyeros met and conferred with the Government regarding his particulars request. The parties did not reach a resolution. Miller Decl. ¶ 3.

On May 17, 2017, the Government responded directly to Dr. Kaloyeros' May 12, 2017 letter.[7] The Government repeated the same positions it expressed in its May 10, 2017 letter. It rejected Dr. Kaloyeros' request for particulars on the new allegations in the Indictment, concluding that "no further particulars are warranted." It also referred Dr. Kaloyeros to an even larger set of non-exhaustive documents spanning over 740,000 pages.

---

[5] A copy of that letter is attached to the Miller Decl. as Exhibit C.

[6] A copy of that letter is attached to the Miller Decl. as Exhibit D.

[7] A copy of that letter is attached to the Miller Decl. as Exhibit E.

## III. STANDARD

Under Federal Rule of Criminal Procedure 7(f), a court has broad discretion to order a bill of particulars. *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). A bill of particulars is appropriate where the indictment's allegations are "so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999). The purpose of a bill of particulars is three-fold. It: (1) enables the defendant to prepare for trial; (2) avoids unfair surprise; and (3) fixes the parameters of the Government's case to avoid double-jeopardy. *See United States v. Siddiqi*, No. 06 CR. 377 SWK, 2007 WL 549420, at *2 (S.D.N.Y. Feb. 21, 2007).

Given these goals, it is immaterial that providing the requested information would require the disclosure of evidence or the Government's theory of the case. *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998). Nor does a defendant's access to discovery obviate the need for particulars. *Bortnovsky*, 820 F.2d at 575 ("The Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged."); *United States v. Mahaffy*, 446 F. Supp. 2d 115, 119–20 (E.D.N.Y. 2006) (recognizing that particulars are warranted "where discovery is overwhelmingly extensive *and* the government fails to designate which documents it intends to introduce and which documents are merely relevant to the defense").

To the extent there is doubt in awarding particulars, such "doubt must be resolved in favor of disclosure and the . . . paramount public interest in affording the accused a reasonable foundation for mounting a defense." *United States v. Manetti*, 323 F. Supp. 683, 696 (D. Del. 1971); *see also United States v. Rogers*, 617 F. Supp. 1024, 1028 (D. Colo. 1985).

## IV. ARGUMENT

As discussed below, Dr. Kaloyeros is entitled to the particulars, referenced above, that were requested in his April 28, 2017 and May 12, 2017 letters.

### A. Dr. Kaloyeros Is Entitled to Particulars Regarding the Alleged "Other" Co-Conspirators (Request No. 6(b)).

"The request for the names of unindicted co-conspirators is a fairly common request and one that is generally granted by the district courts." *United States v. Failla*, No. CR-93-00294(CPS), 1993 WL 547419, at *7 (E.D.N.Y. Dec. 21, 1993); *United States v. Lino*, No. 00 CR. 632 (WHP), 2001 WL 8356, at *12 (S.D.N.Y. Jan. 2, 2001) (same); *United States v. James*, No. 02 CR 0778 (SJ), 2007 WL 914242, at *15 (E.D.N.Y. Mar. 21, 2007) ("Courts have required the government to provide a list of any unindicted co-conspirators or 'co-schemers' if the government intends to introduce evidence about those individuals at trial."). Courts assessing this type of request typically consider six factors: (1) the number of co-conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the Government has otherwise provided adequate notice of the particulars; (4) the volume of pretrial disclosure; (5) the potential danger to alleged co-conspirators and the nature of the alleged criminal conduct; and (6) the potential harm to the Government's investigation. *United States v. Nachamie,* 91 F. Supp. 2d 565, 572 (S.D.N.Y. 2000). Here, each of these factors weighs in favor of disclosure.

First, the number of alleged co-conspirators weighs in favor of disclosure. The Government has cobbled together at least four separate purported conspiracies naming eight co-defendants and an unknown number of "other" co-conspirators. The Government's productions include communications from hundreds (if not thousands) of other individuals, making it impossible for Dr. Kaloyeros to guess with whom he supposedly conspired. Moreover, the alleged scheme revolves around Todd Howe, who is alleged to have simultaneously acted as "an

-8-

agent and representative of SUNY Polytechnic Institute," a "retained consultant," the "president and primary employee of a government relations and lobbying firm," a "close advisor" to Dr. Kaloyeros, and the "primary liaison between SUNY Poly and the Governor's senior staff." Ind. ¶¶ 1, 4, 7, 10, 11. It is thus likely that "some of the alleged co-conspirators may have dealt only with [Howe], and [Dr. Kaloyeros] may have no way of identifying those persons." *United States v. Trie*, 21 F. Supp. 2d 7, 22 (D.D.C. 1998). In short, this is exactly the sort of situation that warrants particulars to "prevent unfair surprise." *Nachamie*, 91 F. Supp. 2d at 573 ("First, there are a large number of co-conspirators (eight defendants and an unknown number of unindicted co-conspirators).").

Second, the Government does not offer detail as to the duration and breadth of the alleged conspiracy. While the Indictment alleges that the scheme occurred between "at least in or about 2013" and "in or about 2015," it also references conduct in 2012. Ind. ¶¶ 7, 38, 41, 45. Courts have granted requests for particulars when confronted with conspiracies of similar duration. *See Trie*, 21 F. Supp. 2d at 22 (noting that "the alleged conspiracies lasted a long time—approximately three and a half years"). The Indictment further fails to describe where the alleged scheme occurred, beyond a vague assertion that events took place "in the Southern District of New York and elsewhere." Ind. ¶¶ 38, 41, 45. This lack of geographic detail makes it more difficult for Dr. Kaloyeros to confront the charges against him. The unnamed co-conspirators could have been located anywhere in New York over a period of more than three years.

Third, the Government does not assert that it has otherwise offered particulars to Dr. Kaloyeros. Indeed, it has not.

Fourth, the volume of pretrial disclosure is significant, making it difficult to identify the contours of the alleged crimes, let alone which of the many individuals involved are alleged to be Dr. Kaloyeros' confederates.

Finally, factors 5 and 6 weigh in favor of disclosure. The Government has identified no danger to alleged co-conspirators or harm to its investigation from disclosure. Indeed, there is none. There is no evidence that Dr. Kaloyeros or others would pose a danger to any alleged co-conspirator. Nor is there evidence that disclosure would threaten the investigation, which appears to have already reached its culmination with the indictment of Dr. Kaloyeros and his co-defendants. *See Nachamie*, 91 F. Supp. 2d at 573 (holding that "there is no legitimate concern that disclosing the names of unindicted co-conspirators will endanger those individuals or compromise the Government's investigation" because "this case charges Medicare fraud—not narcotics trafficking or murder—and defendants must be provided with the names of known unindicted co-conspirators."). *See also United States v. Ajemian*, No. 11 Cr. 1091 (VM), 2012 WL 6762011, at *2 (S.D.N.Y. Dec. 27, 2012) ("Given the large number of named co-conspirators (and unspecified number of unnamed co-conspirators), the extended duration of the alleged conspiracy, the volume of pre-trial disclosures, the apparent lack of potential harm to co-conspirators, and the fact that the potential harm to the Government's investigation is limited by the impending trial date, the Court finds it appropriate to order the Government to show cause as to why it should not produce a limited bill of particulars identifying the names of the unidentified co-conspirators referred to in the Indictment.").

For these reasons, particularization of the alleged co-conspirators is warranted here.

B. Dr. Kaloyeros Is Entitled to Particulars Regarding the Alleged Fraud (Requests 1–6(a), (b)).

The need for particularization is heightened in complex fraud cases, particularly in false statements cases where courts "routinely award" particulars. *Lino*, 2001 WL 8356, at *6; *United States v. Kahale*, 789 F. Supp. 2d 359, 373 (E.D.N.Y. 2009) (recognizing that complex "fraud charges" have "a greater potential for causing unfair surprise at trial due to their complexity"); *United States v. Ashley*, 905 F. Supp. 1146, 1159 (E.D.N.Y. 1995) ("Some substantial indication of the nature or character of any scheme or artifice to defraud, or to obtain money or property by means of false pretenses, representations or promises is requisite."). The obligation to provide particulars can even extend to the overt acts alleged and the timing of the alleged conduct, if disclosure is necessary to the defense. *See United States v. Rajaratnam*, No. 09 Cr. 1184 (RJH), 2010 WL 2788168, at *4 (S.D.N.Y. July 13, 2010) (ordering particularization of detailed act and timing information).[8] Here, particularization of the alleged fraud is warranted.

First, the Indictment's fraud allegations are highly generalized. For example, the Indictment: (1) alleges that Dr. Kaloyeros and Howe "devised a plan to secretly rig Fort Schuyler's bidding process," Ind. ¶ 22, but fails to describe the rules governing that process; (2) fails to fully identify the "secret information" that Dr. Kaloyeros and Howe allegedly provided to the Buffalo and Syracuse Developers, *id*. ¶ 24; (3) does not identify the statement or statements by which Dr. Kaloyeros "represented to Fort Schuyler that the bidding processes for

---

[8] *See also United States v. Oruche*, No. 07 Cr. 0124 (WHP), 2008 WL 612694, at *4 (S.D.N.Y. Mar. 5, 2008) (recognizing that disclosure of overt acts may be appropriate); *United States v. B in Laden*, 92 F. Supp. 2d 225, 237 (S.D.N.Y. 2000) (ordering particularization of overt acts where Government had alleged 144 overt acts in the Indictment); *United States v. Feola*, 651 F. Supp. 1068, 1134 (S.D.N.Y. 1987) (ordering disclosure of the "exact dates" of the start and stop of the alleged conspiracy).

-11-

the Syracuse RFP and Buffalo RFP were fair, open, and competitive,"[9] *id*. ¶¶ 39, 41, 45; (4) fails to specify the "property" which Dr. Kaloyeros allegedly obtained from Fort Schuyler Management Corporation, *id*. ¶¶ 39, 41, 45; and (5) fails to identify how the resulting RFPs were tailored. Courts "routinely" award particulars in false statement cases like this one. *Lino*, 2001 WL 8356, at *6.

Second, Dr. Kaloyeros is entitled to know the particular wire transmissions that form the basis for the charges against him. At present, the Indictment does not identify <u>any</u> wire transmissions. This Court confronted this same issue in *United States v. Silver* and concluded that this type of particularization was warranted where the Government had produced hundreds of thousands of pages of materials. 117 F. Supp. 3d 461, 471 (S.D.N.Y. 2015). As this Court held in *Silver,* it is "not unreasonable for the Defendant to want to know which mailings and wire transmissions the Government will rely upon to prove its case." *Id; see also Nachamie*, 91 F. Supp. 2d at 574 (requiring the Government to "identify each and every one of the 'false and misleading' claims"); *United States v. Reale*, No. S4 96 CR. 1069 (DAB), 1997 WL 580778, at *14 (S.D.N.Y. Sept. 17, 1997); *United States v. Zandstra*, No. 00 CR 209 RWS, 2000 WL 1368050, at *6 (S.D.N.Y. Sept. 20, 2000) (requiring the Government to disclose the approximate dates of allegedly fraudulent mailings). If anything, the case for particulars is even stronger here, where the Government has produced <u>millions</u> of pages of potentially relevant communications. And, while the Government has stated that it will identify the alleged wires at some point

---

[9] *See United States v. King*, No. 94 Cr. 455 (LMM), 1995 WL 146252, at *1 (S.D.N.Y. Apr. 4, 1995) (granting particulars and holding that a "defendant should know what false representations the government claims he made, and how they were fraudulent").

"sufficiently" before trial, immediate particularization is appropriate given that the use of specific wires is a required element of its wire fraud charges.[10]

Third, Dr. Kaloyeros is not requesting a "preview" of the Government's case. Rather, Dr. Kaloyeros' requests properly seek notice of the charges against him as contemplated by Rule 7(f). That the requested particulars will necessarily reveal certain evidence and the Government's theory of the case is immaterial. *Barnes*, 158 F.3d at 665 (recognizing that where particulars are "necessary to give the defendant enough information . . . to prepare his defense," they are "required even if the effect is disclosure of evidence or of theories") (internal quotations omitted).

That the Complaint contains additional detail does not solve these issues because the Complaint does not set the parameters of the Government's case and thereby afford Dr. Kaloyeros protection from double jeopardy. *See Bortnovsky*, 820 F.2d at 574. Instead, the bare bones Indictment improperly leaves "the prosecution free to roam at large—to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal." *Russell v. United States*, 369 U.S. 749, 768 (1962).

---

[10] The Government claims that *United States v. Booth* and *United States v. Chalmers* support its position that immediate identification of the wires is not appropriate. They do not. *Booth* merely supports the notion that particularization in some sense "limits the government's proof at trial" and that proof should not be unduly restricted. *United States v. Booth*, No. 99 CR. 378 LBS, 1999 WL 1192317, at *8 (S.D.N.Y. Dec. 14, 1999). Here, however, the Government's failure is a more basic one of identifying the factual predicate for an element of its charges. And *Chalmers* addressed an Indictment that specifically identified a number of wire transmissions and where the defendants demanded "assurances from the Government that these are the only . . . transmissions it will seek to prove at trial." *United States v. Chalmers* , 410 F. Supp. 2d 278, 284 (S.D.N.Y. 2006).

Under these circumstances, particularization of the alleged fraud as requested is necessary to permit Dr. Kaloyeros to prepare a defense, avoid surprise at trial, and set the parameters for the Government's case. *See, e.g.*, *Siddiqi*, 2007 WL 549420, at *3 (government must specify which statements are at issue where "defendants have prepared multiple statements or documents").

C. The Government's Discovery Strengthens the Case for Particulars.

The Government argues that particularization is unnecessary because it has provided significant volumes of discovery. But rather than obviate the need for particulars as the Government contends, the volume of discovery provided to date buttresses the need for particulars.

As discussed above, the Government has produced over 1.3 million documents from over 400 custodians. This discovery includes documents from a wide range of sources, including individuals, private companies, and public entities not mentioned in the Indictment. As the Second Circuit has recognized, "[t]he Government [does] not fulfill its obligation merely by providing mountains of documents to defense counsel who [are] left unguided . . . ." *See Bortnovsky*, 820 F.2d at 575; *United States v. Davidoff*, 845 F.2d 1151, 1155 (2d Cir. 1988) (finding disclosure of *Jencks* material was not "adequate substitute for" appropriate particularization).

The Government's May 10, 2017 and May 17, 2017 letters do not alter this analysis. The letters' "roadmap[s]" encompass hundreds of individuals and over 700,000 pages, covering hundreds of other individuals. Even this massive volume of discovery "is by no means an exhaustive identification of potential information or evidence," and does not in any way limit the Government's "evidence, arguments or legal theories at trial." Ex. B at 3; Ex. E at 2. The

Government's refusal to make more specific disclosures only reinforces the need for particularization.

Moreover, the need for particularization is particularly acute here given the Indictment's open-ended allegations of unspecified "other" co-conspirators and "other" unalleged conducted. Ind. ¶ 25 (alleging that Dr. Kaloyeros "deceived and concealed material information from Fort Schuyler and its Board of Directors in the following ways, among others"); *id.* ¶ 39 (alleging that Dr. Kaloyeros "and others known and unknown" conspired to commit wire fraud). *See Lino*, 2001 WL 8356, at *13 ("The problems posed by the scope of the indictment are compounded by the voluminous amount of discovery in this case.").

At bottom, the Court should not force Dr. Kaloyeros to waste precious pre-trial preparation time guessing as to the Government's allegations. As the court held in *Trie*:

> Not only does the government's position presume that the defendant knows what the government alleges that he did and with whom he dealt and therefore has all the information he needs, a premise inconsistent with the presumption of innocence, but it smacks of gamesmanship. A defendant faced with false statements charges should not have to waste precious pre-trial preparation time guessing which statements he has to defend against or which contributors may be witnesses against him at trial when the government knows precisely the statements on which it intends to rely and can easily provide the information.

21 F. Supp. 2d at 21.

## V. CONCLUSION

For the reasons set forth above, the Court should order that the Government provide a bill of particulars as requested.

/s/ Michael C. Miller
Michael C. Miller
Jeffrey A. Novack
Katherine M. Dubyak
David B. Hirsch
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

*Counsel for Alain Kaloyeros*

Dated: May 19, 2017