**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x
                             :

UNITED STATES OF AMERICA     :

                             :

           v.            :

                             :     Case No. 16-cr-00776 (VEC)

ALAIN KALOYEROS, et al.,    :

                             :

        Defendants.       :

                             :

-------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ALAIN KALOYEROS'**
**<u>MOTION FOR SEVERANCE</u>**

Michael C. Miller
Jeffrey A. Novack
Katherine M. Dubyak
David B. Hirsch
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

*Counsel for Alain Kaloyeros*

Dated: May 19, 2017

Defendant Alain Kaloyeros ("Dr. Kaloyeros") respectfully submits this memorandum of law in support of his motion for severance from Defendants Percoco, Kelly, Aiello, and Gerardi.

## I.    **<u>INTRODUCTION</u>**

The eight Defendants in this 15-count case are not united by a single common alleged scheme. Instead, what unites Defendants is a common prior association with the Government's lead cooperator—Todd Howe.

Dr. Kaloyeros is alleged to have conspired with Howe to rig bids in Syracuse and Buffalo (Counts 1 through 5). In Syracuse, Dr. Kaloyeros and Howe are alleged to have schemed with Defendants Aiello and Gerardi (the "Syracuse Defendants"). In Buffalo, Dr. Kaloyeros and Howe are alleged to have schemed with Defendants Ciminelli, Schuler, and Laipple (the "Buffalo Defendants"). Separately, Counts 6 through 15 of the Indictment[1] allege that: (1) the Syracuse Defendants bribed Defendant Percoco using Howe as a conduit, and later lied about their separate schemes involving Dr. Kaloyeros and Mr. Percoco to federal agents; and (2) Defendant Kelly bribed Mr. Percoco through Howe.

The common connection to Howe is not, however, sufficient to support joinder of all eight defendants in the Indictment. This misjoinder supports severance of Counts 6 to 14—all of which allege payments to Mr. Percoco—in full. It also supports severance of Count 15 to the extent that it is based on the alleged payments to Mr. Percoco by the Syracuse Defendants. In addition, the extreme danger of spillover prejudice and the difficulty in managing an eight-

---

[1]    The "Indictment" or "Ind." refers to the Superseding Indictment filed May 11, 2017. [Docket No. 162].

defendant trial warrant severance of Dr. Kaloyeros and the Buffalo Defendants from Defendants Percoco, Kelly, Aiello, and Gerardi.

## II. BACKGROUND

On November 22, 2016, the Government filed a 14-count indictment. [Docket No. 49]. On May 11, 2017, the Government filed a 15-count superseding indictment. [Docket No. 162].

Counts 1 through 5 revolve around the allegation that Dr. Kaloyeros and Howe conspired with the Syracuse Defendants and the Buffalo Defendants to rig requests for proposals ("RFPs") for construction projects in Syracuse and Buffalo. Ind. ¶¶ 37–47. Dr. Kaloyeros is named in Counts 1, 2, and 4, and is charged with wire fraud conspiracy with the Syracuse Defendants and the Buffalo Defendants (Count 1), wire fraud with the Syracuse Defendants (Count 2), and wire fraud with the Buffalo Defendants (Count 4). *Id*. ¶¶ 37–41, 44–45. Counts 3 and 5 allege that the Syracuse Defendants and the Buffalo Defendants bribed Howe. *Id*. ¶¶ 42–43, 46–47. Dr. Kaloyeros is not alleged to have participated in any bribery in connection with these counts or otherwise.

Counts 6 through 14 center on the alleged payments to Defendant Percoco by the Syracuse Defendants and Defendant Kelly. *Id*. ¶¶ 48–67. Neither Dr. Kaloyeros nor the Buffalo Defendants are alleged to have had any participation in this conduct.

Count 15 alleges that the Syracuse Defendants lied about bid-rigging of the RFPs and about bribing Defendant Percoco when they were interviewed by federal agents. *Id*. ¶¶ 68–69. Dr. Kaloyeros and the Buffalo Defendants are not alleged to have had any participation in this conduct.

III. **STANDARD**

The applicable joinder and severance standards are detailed below.

A. Misjoinder

Under Federal Rule of Criminal Procedure 8(b), multiple defendants may be tried together only "where the criminal acts of two or more persons (1) arise out of a common plan or scheme, or (2) are unified by some substantial identity of facts or participants." Fed. R. Crim. P. 8(b); *United States v. Cervone* , 907 F.2d 332, 341 (2d Cir. 1990). Alleged criminal schemes cannot meet the common plan/scheme requirement "merely because they are of a similar character or involve one or more common participants. *United States v. Lech*, 161 F.R.D. 256, 256 (S.D.N.Y. 1995). Rather, one scheme must have "stemmed from the other such that one scheme is part and parcel of the other." *United States v. Rajaratnam*, 753 F. Supp. 2d 299, 304 (S.D.N.Y. 2010) (quotations and citations omitted). The substantial identity test is not met where "commission of one of the offenses neither depended upon nor necessarily led to the commission of the other and proof of the one act neither constituted nor depended upon proof of the other." *Id.*

The remedy for misjoinder is the severance of the improperly joined counts. *United States v. Giraldo*, 859 F. Supp. 52, 55 (E.D.N.Y. 1994), *aff'd*, 80 F.3d 667 (2d Cir. 1996); *United States v. Forde*, 699 F. Supp. 2d 637, 640 (S.D.N.Y. 2010) (holding that the "appropriate remedy for misjoinder is severance.").

B. Severance

Under Federal Rule of Criminal Procedure 14, a court has broad discretion to "order separate trials of counts, sever the defendants' trials, or provide any other relief that justice

requires" if "the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). In particular, severance is warranted where there is a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *See Zafiro v. United States*, 506 U.S. 534, 539 (1993).

In determining whether to grant severance, a court may consider: (1) the number of co-defendants and counts; (2) the indictment's complexity; (3) the anticipated length of trial; (4) the disparities in each defendant's level of involvement in the overall scheme; (5) possible conflicts between defense theories; and (6) prejudice resulting from the admission of evidence admissible to certain, but not all defendants. *United States v. Santiago*, 174 F. Supp. 2d 16, 22 (S.D.N.Y. 2001). "While none of these factors is dispositive, each is intended to provide guidance as to whether a jury will be capable of considering the evidence as to each defendant separately, independent of evidence against co-defendants." *Id*. The "ultimate question is whether . . . the jury can keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to him." *United States v. Kahaner*, 203 F. Supp. 78, 81–82 (S.D.N.Y. 1962).

## IV. **ARGUMENT**

Severance is warranted here. First, Dr. Kaloyeros is improperly joined under Rule 8 with the purported conspiracies involving Defendant Percoco, the Syracuse Defendants, and Defendant Kelly. Dr. Kaloyeros is also improperly joined with Count 15 to the extent it is premised on the Syracuse Defendants lying about bribing Mr. Percoco. This merits severance of Counts 6–14 in full, and Count 15, in part. Second, severance is warranted under Rule 14 from Defendants Percoco, Kelly, Aiello, and Gerardi due to the substantial risk of spillover prejudice

to Dr. Kaloyeros and the Buffalo Defendants, as well as the judicial efficiency that would result from a four-defendant trial.

A.    The Indictment Improperly Joins Dr. Kaloyeros With Unrelated Conduct Charged in Counts 6 through 15.

Counts 6 through 14 and Count 15, to the extent they are premised on allegations of bribery, are misjoined with the counts charging Dr. Kaloyeros. The Government itself essentially concedes this. The Indictment labels the bribery charges a "second scheme," in addition to the alleged bid-rigging scheme, and dubs it "[t]he Percoco Bribery Scheme." Ind. ¶ 28.[2] The Government draws this division with good reason, as there is no common scheme alleged and no substantial identity of facts and participants.

1.    There Is No Common Scheme Alleged.

To begin with, neither Dr. Kaloyeros nor the Buffalo Defendants are alleged to have had <u>any</u> involvement in the bribery alleged in Counts 6 through 15. Nor is the conduct alleged otherwise part of some broader common scheme. Dr. Kaloyeros is charged with discrete conduct: the supposed rigging of RFPs in Syracuse and Buffalo. The bribery alleged in Counts 6 through 15 revolves around two separate and distinct bribery schemes that have nothing to do with the supposed bid-rigging. Those counts allege that Defendant Percoco was bribed to take official action on behalf of an energy company and separately to assist the Syracuse Defendants

---

[2]    *See also* April 6, 2017 Status Conference Tr. at 19:17–20:1 [Docket No. 156] (Government conceding that the Indictment can be equated to a Venn diagram—with one circle including the "Percoco bribery scheme. . . [and] a second circle . . . called the Buffalo billion bribery scheme . . . [t]hat involves Dr. Kaloyeros, the Buffalo defendants, and the Syracuse defendants.").

on issues unrelated to the RFP, and that the Syracuse Defendants lied about bribing Mr. Percoco when interviewed by the Government.

In short, the alleged bribery is not "part and parcel" of the alleged bid-rigging conduct. Therefore, no overarching common plan is alleged despite overlap between some of the participants in each scheme. *See United States v. Ohle* , 678 F. Supp. 2d 215, 227 (S.D.N.Y. 2010) (finding severance warranted where the similarity between the two alleged conspiracies was "marginal"); *United States v. Kouzmine*, 921 F. Supp. 1131, 1333 (S.D.N.Y. 1996) (granting severance where the only basis for finding that separate conspiracies were part of an overarching common scheme was that they had two participants and a victim in common).

2.     There is No Substantial Identity of Facts and Participants.

Nor do these Counts have a substantial identity of facts and participants with those involving Dr. Kaloyeros.

First, there is no overlap with respect to facts.  The bribery alleged in Counts 6 through 15 is premised on proving that Howe orchestrated multiple schemes to bribe Mr. Percoco and that the Syracuse Defendants lied about it.  None of the facts that would support these claims have any bearing on whether Howe separately orchestrated schemes to rig bids for RFPs, and Dr. Kaloyeros is not alleged to have any knowledge of or involvement in the facts surrounding the alleged bribery.  *See, e.g.*, *Kouzmine*, 921 F. Supp. at 1333 (observing that severance is warranted when there is "no suggestion that the moving defendant knew of or participated in the schemes other than the one with which he was charged"); *United States v. Gentile* , 60 F.R.D. 686, 689 (E.D.N.Y. 1973) (granting severance where the indictment and the facts elicited by discovery evidenced that there were "three separate and distinct offenses" involved in the case).

Second, there is substantial divergence of participants. Counts 6 through 14 implicate Defendants Percoco, Kelly and the Syracuse Defendants, but not Dr. Kaloyeros and the Buffalo Defendants. And the Percoco-related conduct in Count 15 implicates Mr. Percoco, but not Dr. Kaloyeros or the Buffalo Defendants. That there is some overlap—*i.e.* that the Syracuse Defendants and Howe are alleged to have participated in some of the Percoco-related conduct—is insufficient to warrant joinder of otherwise unrelated claims. *See, e.g.*, *Lech*, 161 F.R.D. at 256 ("It is well settled, however, that two separate transactions do not constitute a 'series' within the meaning of Rule 8(b) 'merely because they are of a similar character or involve one or more common participants.'"); *Giraldo*, 859 F. Supp. at 55 ("[D]efendants charged with two separate—albeit similar—conspiracies having one common participant are not, without more, properly joined.").

At bottom, proving the bribery schemes alleged in Counts 6 through 15 is entirely independent from proving the remaining conduct in the Indictment. There is therefore insufficient identity of facts and parties to support joinder.

For these reasons, Counts 6 through 14 should be severed in full and Count 15 should be severed to the extent it is premised on Percoco-related conduct.

B.      Severance Is Warranted From Defendants Percoco, Kelly, Aiello, and Gerardi.

Severance from the Syracuse Defendants, Mr. Percoco, and Mr. Kelly is also warranted under Federal Rule of Criminal Procedure 14.

First, the number of co-defendants and counts warrant severance. Dr. Kaloyeros' proposed severance will reduce the case from an eight defendant and 15-count case to a four defendant and 5-count case. This is a far more manageable case for the Court to administer

(particularly in light of the sheer number of defendants and law firms that will need to be accommodated in one courtroom should severance be denied) and for the jury to evaluate. *See United States v. Gallo,* 668 F. Supp. 736, 755 (E.D.N.Y. 1987) (granting severance of certain defendants in a multi-defendant, multi-count case in part because the number of defendants and counts made management of one joint trial unwieldy).

Second, the Indictment's complexity warrants severance. The Second Circuit has recognized that "[i]t is obvious that as the number of counts is increased, the record becomes more complex and it is more difficult for a juror to keep the various charges against the several defendants and the testimony as to each of them separate in his mind." *United States v. Branker*, 395 F.2d 881, 887–88 (2d Cir. 1968). So too here. The Indictment charges at least four separate conspiracies and multiple different legal theories. Dr. Kaloyeros' proposed severance would reduce the complexity of the case by half. It would remove two of the conspiracies—the Percoco/Kelly and the Percoco/Syracuse Defendants bribery schemes. It would also cut down on the number of separate legal theories at issue. Presently, there are eight distinct legal theories in the Indictment:

(1) conspiracy to commit wire fraud (Count 1);

(2) wire fraud (Counts 2 and 4);

(3) payment of bribes and gratuities (Counts 3, 5, 13, and 14);

(4) conspiracy to commit extortion under color of official right (Count 6);

(5) extortion under color of official right (Counts 7 and 8);

(6) conspiracy to commit honest services wire fraud (Counts 9 and 10);

(7) solicitation of bribes and gratuities (Counts 11 and 12); and

(8) false statements to federal officers (Count 15).

Dr. Kaloyeros' proposed severance would reduce the number of theories at issue to three: (1) conspiracy to commit wire fraud; (2) wire fraud; and (3) payment of bribes and gratuities. Similar to the complex multi-defendant indictment at issue in *Gallo*, the Court's refusal to grant severance here would require a "single jury . . . to make almost a gross of separate decisions of guilt or innocence after a long and arduous trial . . . [where] [m]uch of the relevant evidence would have been introduced and stored in the jury's collective mind for many months—and a good deal of it introduced only as to certain defendants or certain charges." 668 F. Supp. at 750 (severance granted).

Third, the anticipated length of trial militates in favor of severance. Beyond the substantial additional conduct at issue, an eight defendant, 15-count trial would also likely be lengthened by continued disputes as to spillover evidentiary issues and limiting instructions. *See United States v. Santiago*, 174 F. Supp. 2d at 22 (observing that the estimated length of a trial may be considered by a Court in assessing whether severance is warranted).

Fourth, the proposed severance will ameliorate the risk of spillover prejudice to Dr. Kaloyeros and the Buffalo Defendants that would result from a trial including the Percoco-related schemes. As previously stated, Dr. Kaloyeros is charged in only 3 of the 15 counts in the Indictment and is not alleged to have participated in or had knowledge of any bribery scheme included in the Indictment. Similarly, neither Dr. Kaloyeros nor the Buffalo Defendants have any involvement in ten—well over half—of the counts in the Indictment. Under these circumstances, a joint trial would severely prejudice Dr. Kaloyeros and the Buffalo Defendants.

As the Second Circuit has recognized, "when several crimes are tried together . . . the jury may use the evidence cumulatively; that is, that, although so much as would be admissible upon any one of the charges might not have persuaded them of the accused's guilt, the sum of it will convince them as to all." *Herring v. Meachum*, 11 F.3d 374, 377 (2d Cir. 1993). This risk is "particularly injurious to defendants who are charged in only a few of the many counts, . . . and who are linked with only one or two of their co-defendants" because "[t]he jury is subjected to weeks of trial dealing with dozens of incidents of criminal misconduct which do not involve these defendants in any way." *Branker*, 395 F.2d at 888; *see also United States v. Bellomo*, 954 F. Supp. 630, 651 (S.D.N.Y. 1997) (finding that severance was warranted for defendants who were "alleged to have committed only a small number of violations . . . yet the government proposes to have them go through a trial in which a large criminal enterprise will be alleged").

Moreover, the use of limiting instructions, which has often been cited as a basis for denying severance, would be inadequate here. Given the complexity of the Indictment, the number of defendants involved, and the likely length of the trial in the event that severance is not granted, it would be far too much "to expect that a jury would be able to discern the myriad of subtle distinctions and mental gyrations that would be required by the inevitable plethora of limiting instructions necessary." *Gallo*, 668 F. Supp. at 753.

At bottom, while there has traditionally been a strong presumption in favor of joint trials, "there are limits to the risks a co-defendant must endure. *United States v. Figueroa*, 618 F. 2d 934, 944 (2d Cir. 1980). Here, those limits are far surpassed and severance is warranted.

C.     The Position of Dr. Kaloyeros' Co-Defendants Also Militates in Favor of this Relief.

This requested relief is also broadly consistent with the relief requested by Dr. Kaloyeros' co-defendants. Counsel for Dr. Kaloyeros understand that: (1) the Buffalo Defendants are seeking severance from the remaining Defendants; (2) the Syracuse Defendants envision a three-defendant trial with Mr. Percoco; (3) Defendant Percoco is seeking severance from Dr. Kaloyeros, the Buffalo Defendants, and the RFP portion of the case against the Syracuse Defendants, and (4) Defendant Kelly envisions a two-defendant trial with Defendant Percoco.

Dr. Kaloyeros' proposed severance is therefore warranted for this additional reason as well.

## V.    **CONCLUSION**

For these reasons, the Court should grant severance of (i) Counts 1–5 from Counts 6–15 (in full or in part); and (ii) Dr. Kaloyeros and the Buffalo Defendants from Defendants Percoco, Kelly, Aiello, and Gerardi.

Respectfully submitted,

/s/ Michael C. Miller
Michael C. Miller
Jeffrey A. Novack
Katherine M. Dubyak
David B. Hirsch
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

*Counsel for Alain Kaloyeros*

Dated: May 19, 2017