UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
:
UNITED STATES OF AMERICA                             :
:
v.                                                   :
:    Case No. 16-cr-00776 (VEC)
ALAIN KALOYEROS, et al.,                             :
:
Defendants.                                          :
:
-------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ALAIN KALOYEROS'
MOTION TO COMPEL PRODUCTION OF *BRADY* MATERIALS**

Michael C. Miller
Jeffrey A. Novack
Katherine M. Dubyak
David B. Hirsch
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

*Counsel for Alain Kaloyeros*

Dated: May 19, 2017

Defendant Alain Kaloyeros ("Dr. Kaloyeros") respectfully submits this memorandum of law, together with the Declaration of Michael C. Miller ("Miller Decl."), in support of his motion to compel the Government to produce any exculpatory evidence falling within the purview of *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny.

## I. INTRODUCTION

The Government has a clear and well-established duty to disclose all evidence that is "favorable to an accused," or "material either to guilt or to punishment." *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). As detailed below, there is substantial reason to believe the Government is not abiding by that obligation and that it possesses—but has not disclosed—substantial exculpatory material which demonstrates that Dr. Kaloyeros acted in good faith at all times and that Fort Schuyler Management Corporation ("FSMC") was not defrauded in connection with the requests for proposals (the "RFPs") issued for Buffalo and Syracuse.

While the Government has repeatedly denied that it is aware of any *Brady* material, this Court should not credit this unbelievable claim. First, the Government appears to be taking an extremely narrow view of what constitutes *Brady* material. For example, it appears that the Government does not believe that witness statements, which directly conflict with important factual allegations in the Indictment, are *Brady* material. During a recent telephonic meet and confer, we asked the Government whether it would deem statements to be *Brady* material if they conflicted with the Indictment's allegations that the RFPs at issue were tailored to favor two developers. We hypothesized a scenario where a witness tells the Government that the RFPs at issue in this case contained generic terms which provided FSMC with a larger pool of potential candidates to consider, and that the alleged "tailored" terms were actually quite sensible and laudable (including provisions supporting minority and women-owned businesses). The

Government declined to engage in a discussion about this or any other hypothetical and left us with the strong impression that the prosecution team does not view statements such as these to be *Brady* material.

We think it is highly likely that witnesses have told the Government that the RFP's contained plain vanilla terms, that the allegedly tailored language in the RFP's were actually helpful and consistent with legal and contractual obligations, and that FSMC ended up getting a first rate product for a fair price in both Buffalo and Syracuse. This all makes sense because, objectively, the RFPs are generic and the allegedly tailored provisions are, in fact, quite sensible and laudable.

Second, and similarly, the Government has failed to produce witness statements from Dr. Kaloyeros' alleged co-conspirators in which we believe they denied the Government's allegations. These statements are plainly exculpatory and there is good reason to believe the Government possesses, but has not disclosed, other similarly exculpatory material.

Extraordinary relief is necessary given the extraordinary nature of the Government's refusal to acknowledge the existence of any *Brady* material in response to specific questioning by Defendants and the Court. *See, e.g.*, April 6, 2017 Status Conference Tr. at 5:2–8:4. The Court should order the Government to: (1) immediately articulate exactly what criteria it is using to identify *Brady* material in the context of this Indictment, (2) produce all statements by witnesses or their attorneys; (3) memorialize and produce any unrecorded statements, including those from witnesses' attorneys; and (4) detail (a) its communications with counsel and witnesses, (b) whether those communications were recorded, and (c) its practices related to the memorialization of potential *Brady* material, including from attorney proffers. These steps are

necessary to rectify the Government's failure to produce *Brady* material and allow an assessment of whether further discovery regarding undisclosed *Brady* material is necessary.

## II. BACKGROUND

On April 28, 2017, counsel for Dr. Kaloyeros wrote to the Government requesting "open file" discovery of all documents and evidences it has obtained through its investigation, as well as all grand jury transcripts, Federal Bureau of Investigation 302s, and interview memoranda—or in the alternative, discovery consistent with the Government's obligations under relevant statutes, rules, and cases including, but not limited to, *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972).[1]

With respect to *Brady* material, the letter specifically requested:

1. Any document or information indicating or tending to establish that any of the allegations in the Indictment are not true.

2. Any document or information indicating or tending to establish that the conduct that is the subject of the Indictment did not violate government laws, regulations, standards, or established business practices.

3. Any documents or information indicating or tending to establish that Dr. Kaloyeros did not instigate, control, authorize, approve, or acquiesce in any conduct that is the subject of the Indictment.

4. Any document or information indicating or tending to establish that:

    a. Dr. Kaloyeros engaged in any conduct that forms the basis of the Indictment in reliance upon advice provided by counsel.

    b. Dr. Kaloyeros engaged in any conduct that forms the basis of the Indictment with the good faith belief that his conduct did not constitute a crime.

---

[1] A copy of Dr. Kaloyeros' letter is attached to the Miller Decl. as Exhibit A.

c. No state procurement rules or FSMC policy applied to the transactions alleged in the Indictment.

d. No state procurement rules or FSMC policy prohibited the pre-RFP contact with developers alleged in the Indictment.

e. The Buffalo and Syracuse RFPs were non-binding.

f. The Buffalo and Syracuse RFPs were not tailored to any particular developer.

g. The Buffalo and Syracuse RFPs were developed and/or reviewed by FSMC staff, Board member(s), and inside and outside counsel.

h. Defendants, witnesses, or their counsel have represented to the Government that no wrongdoing occurred in connection with the Buffalo and Syracuse RFPs.

i. FSMC was not defrauded by Dr. Kaloyeros.

j. FSMC suffered no economic harm in connection with the transactions alleged in the Indictment.

k. FSMC never faced even the potential for economic harm in connection with the transactions alleged in the Indictment.

The letter also specifically noted that the Second Circuit has recognized that attorney proffers are just as subject to *Brady* obligations as witness proffers. *United States v. Triumph Capital Grp., Inc.*, 544 F.3d 149, 157, 165 (2d Cir. 2008).

On May 15, 2017, the Government responded.[2] It claimed, consistent with its prior stance in communications with Defendants and the Court, that it was unaware of <u>any</u> *Brady* material. It nonetheless produced various SUNY Research Foundation policies, but maintained that "the existence or applicability of State procurement rules and/or Fort Schuyler Management Corporation ('FSMC') policies does not constitute exculpatory evidence." Ex. B. at 3.

---

2   A copy of the Government's letter is attached to the Miller Decl. as Exhibit B.

On May 16, 2017, counsel for Dr. Kaloyeros met and conferred with the Government regarding Dr. Kaloyeros' *Brady* request and no resolution of the issue was reached. *See* Miller Decl. ¶ 3. During the meet and confer, the Government took the position that it was unaware of any *Brady* material in witness statements or attorney proffers. It also appears to have taken the remarkable position that a witness statement defending the RFPs' terms as vanilla, meritorious, and likely to lead to additional developer participation would not be exculpatory *Brady* material.

To date, the Government has produced no witness statements, no attorney proffer statements, and no other document memorializing its receipt of *Brady* material.

## III. STANDARD

Under *Brady* and its progeny, the Government "has a constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment." *United State v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001). This duty requires that the Government disclose material information that is "favorable to the accused, either because it is exculpatory, or because it is impeaching." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999); *see also Giglio v. United States*, 405 U.S. 150, 154–55 (1972) (applying *Brady* to evidence that can be used to impeach prosecution witnesses). This obligation extends to exculpatory statements communicated to the Government by a witness's lawyer. *United States v. Triumph Capital Grp., Inc.*, 544 F.3d 149, 157 (2d Cir. 2008). That the Government may put its pens down is no answer. Its *Brady* obligations apply not only to any recorded statements, but to all unrecorded statements of a witness that are favorable to an accused. *United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007).

In addressing *Brady* issues, the Court has broad authority to regulate discovery under its inherent authority and Rule 16(d) of the Federal Rules of Criminal Procedure. *See United States*

*v. Perez*, 222 F. Supp. 2d 164, 166 (D. Conn. 2002) (recognizing inherent authority to control disclosure of *Brady* material); Fed. R. Crim. P. 16(d)(1) ("At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief.").

## IV. ARGUMENT

Here, there is substantial reason to believe the Government is not satisfying its *Brady* obligations.

### A. The Government's *Brady* Position is Absurd.

*Brady* and its progeny require the Government to disclose any evidence that is "favorable to the accused, either because it is exculpatory, or because it is impeaching." *Strickler*, 527 U.S. at 281–83. Evidence need not completely exonerate a defendant to be exculpatory or favorable in nature. The Government's position that certain evidence is "inculpatory" is not dispositive. *Id.* at 282 n.21 ("Our cases make clear that *Brady's* disclosure requirements extend to materials that, whatever their other characteristics, may be used to impeach a witness.").

Here, the narrow scope of the Government's *Brady* position twists the definition of "exculpatory" evidence beyond recognition. Witness testimony reflecting that the terms at issue had independent merit, were generic, and would lead to additional developer participation is plainly exculpatory and relevant to whether: (1) the RFPs were in fact tailored; (2) Dr. Kaloyeros intended to favor any particular developer; and (3) Dr. Kaloyeros intended to harm FSMC. The Court should reject the Government's arguments to the contrary.

### B. The Evidentiary Record Shows that the Government Has Failed to Disclose *Brady* Material.

Based on the record, there is strong reason to believe that the Government has applied its improperly restrictive *Brady* definition to wrongfully withhold exculpatory materials.

First, the Government has failed to produce exculpatory interviews of Defendants Aiello and Gerardi. The charges against Dr. Kaloyeros are predicated, in part, on the claim that he tailored an RFP to favor the company run by Defendants Aiello and Gerardi. Count 15 of the Indictment[3] alleges that, during their July 2016 interviews with the Government, Defendants Aiello and Gerardi denied "involvement . . . in tailoring a request for proposal for the benefit of their company." Ind. ¶ 69. While the Government claims that these statements were false, they are plainly exculpatory on their face. The Government's denial of any awareness of *Brady* materials, while possessing these documents, is extraordinary.

Second, the Government has produced almost no exculpatory materials from the interviews of the Government's cooperator—Todd Howe. It is not plausible that Howe's interviews lack additional exculpatory material. For example, all Defendants aside from Dr. Kaloyeros are charged with bribery of Howe or bribery of Defendant Percoco using Howe as a conduit. Further, neither the Indictment nor the Complaint[4] allege that Dr. Kaloyeros had knowledge of any financial relationship between Howe and the developers who allegedly bribed Howe. Together, these facts raise the inferences that Howe told the Government that Dr. Kaloyeros: (1) did not accept or pay any bribes; and (2) was unaware of any bribery of Howe. While Dr. Kaloyeros is not charged with bribery, this is exculpatory because it undercuts the notion that Dr. Kaloyeros had, or thought Howe had, a financial motivation to allegedly rig the RFPs to favor these developers. This is just one example of the type of exculpatory material likely in Howe's interviews.

---

[3] The "Indictment" refers to the Superseding Indictment filed May 11, 2017. [Docket No. 162].

[4] The "Complaint" refers to the Complaint filed September 20, 2016. [Docket No. 1].

Third, the Government has produced no exculpatory materials from other witnesses. It is equally implausible that there are no such materials given the documents produced in discovery thus far. A review of those documents reveals that: (1) FSMC personnel were aware of pre-RFP contact with potential developers; (2) the RFPs at issue in the Indictment were drafted and reviewed by FSMC staff, inside and outside counsel, and at least one board member; (3) other FSMC officials contemporaneously took responsibility for the inclusion of a term in the Buffalo RFP calling for 50 years of experience, described the figure as an error, and promptly corrected it; (4) the RFPs at issue contained vanilla terms that were substantially similar to other RFPs issued by FSMC and not tailored to favor any particular developer; (5) an independent team evaluated the responses to the RFPs; (6) there is no proof of any economic harm, intent to cause economic harm, or even the potential for harm, because the RFPs at issue were non-binding, the actual contracts for the projects were separately negotiated, and FSMC had the right to negotiate with other developers without issuing a new RFP; and (7) the negotiations with the Buffalo Developer and the Syracuse Developer were conducted at arms-length. Given the apparently wide scope of the Government's investigation and these facts, the Government's position that <u>no witness</u> has made any exculpatory statements should not be credited.

Finally, the Government has not turned over any materials generated from attorney proffers made to the Government over the course of its investigation. The Government's position that there are no attorney proffers containing *Brady* material is inconsistent with our understanding that various witnesses have made representations to the Government, through counsel, that are exculpatory in nature.

### C. Extraordinary Relief Is Warranted.

At bottom, the Court should not credit the Government's claim that it is unaware of any *Brady* material. That claim is not defensible in light of: (1) the Government's absurd position on what constitutes *Brady* material; (2) the Government's glaring failure to acknowledge the *Brady* character of the Aiello and Gerardi interviews; and (3) the preposterousness of the Government's claim that no witness (including Howe) or attorney has made <u>any</u> exculpatory statement.

Given these circumstances, merely ordering the Government to look again is not sufficient. The Court should instead order the following relief:

- The Government should be required to articulate what criteria it is applying in deciding what constitutes *Brady* material—bland assurances that the Government understands its obligations under controlling case law are not sufficient.

- The Government should be compelled to immediately produce all statements by witnesses or their attorneys.

- The Government should be directed to promptly memorialize and disclose any unrecorded statements by witnesses or their attorneys.

- The Government should be ordered to produce a disclosure detailing all communications it has had with counsel and witnesses, whether those communications were memorialized, and its practices in this case with respect to the memorialization of potential *Brady* material, including material from attorney proffers.

## IV. CONCLUSION

For these reasons, the Court should order the relief requested above.

Respectfully submitted,

/s/ Michael C. Miller
Michael C. Miller
Jeffrey A. Novack
Katherine M. Dubyak
David B. Hirsch
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

*Counsel for Alain Kaloyeros*

Dated: May 19, 2017