# EXHIBIT A

1114 Avenue of the Americas
New York, NY 10036

212 506 3900 main
www.steptoe.com

Michael Campion Miller
212 506 3995 direct
212 506 3950 fax
mmiller@steptoe.com

**Steptoe**
STEPTOE & JOHNSON LLP

April 28, 2017

<u>Via E-Mail</u>

Janis Echenberg
U.S. Attorney's Office, SDNY
One St. Andrew's Plaza
New York, NY 10007

> Re: *U.S. v. Alain Kaloyeros, (*S.D.N.Y., 16-Cr-00776 (VEC)
> Request for Discovery and *Brady* Material

Dear Ms. Echenberg:

This firm represents defendant Alain Kaloyeros in the above-referenced matter.

We write to request that the Government provide "open file" discovery in this case, including the prompt production of all of documents and other evidence the Government has obtained in its investigation and all grand jury transcripts, Federal Bureau of Investigation ("FBI") 302s, and interview memoranda relevant to this case.

In the event that you do not provide "open file" discovery, we request that you provide discovery consistent with the Government's obligations under: (1) the Fifth and Sixth Amendments to the United States Constitution; (2) Rules 12, 16, and 26.2 of the Federal Rules of Criminal Procedure; (3) case law including *Brady v. Maryland*, 373 U.S. 83 (1963) and *Jencks v. United States*, 353 U.S. 657 (1957); (4) the Government's ethical responsibilities under New York Rule of Professional Conduct 3.8; and (5) DOJ policy, as reflected in the Department of Justice's Guidance for Prosecutors Regarding Criminal Discovery.

We specifically request[1] that you produce and/or permit inspection and copying or photographing of the materials specified below. This request encompasses not only documents[2] and

---

[1]   All of these requests are continuing in nature, requiring supplementation in accordance with Fed. R. Crim. P. 16(c).

[2]   The word "documents" includes, but is not limited to, all books, papers, letters, correspondence, reports, memoranda, studies, calendars, appointment books, diaries, notes, messages, e-mail, text

(Continued…)



information in the possession, custody, or control of, or that have been reviewed by, the U.S. Attorney's Office for the Southern District of New York, but also documents and information in the possession, custody, or control of, or that have been reviewed by, any federal, state or local agency allied with the Government or involved in any way with investigating the activities alleged in the Indictment or related conduct, including but not limited to the FBI.

## I.    Statements of the Defendant

1. Any written or recorded statements made by Dr. Kaloyeros within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the government. *See* Fed. R. Crim. P. 16(a)(1)(B)(i). This request includes, without limitation:

   a. All interview memoranda summarizing any interview of Dr. Kaloyeros by the government, including all drafts of such interview memoranda;

   b. All transcripts and/or recordings of conversations in which Dr. Kaloyeros participated;

   c. All wire and oral communications made by Dr. Kaloyeros that were transmitted to or intercepted by, for or on behalf of any government agent or employee or any agency or entity of the government;

   d. All written or recorded statements of witnesses that reflect, relate, or incorporate any statements made by Dr. Kaloyeros; and

   e. All other documents that purport to reflect, relate, or incorporate any statements made by Dr. Kaloyeros.

2. The portion of any written record containing the substance of any oral statement made by Dr. Kaloyeros, whether before or after arrest, in response to interrogation by any person then known to Dr. Kaloyeros to be a government agent. *See* Fed. R. Crim. P. 16(a)(1)(B)(ii). This request includes without limitation, all documents, including notes, prepared by any FBI employee or agent that contain the substance of any relevant statement made by Dr. Kaloyeros.

---

messages, instant messages, other computer facilitated or transmitted materials, images, photographs, polaroids, information in any computer database, audio and video tapes, recordings, transcripts, ledgers, printouts, contracts, checks, receipts, and all copies or portions thereof, and any other written, recorded, or memorialized material of any nature whatsoever.



3.    The substance of any other oral statement made by Dr. Kaloyeros, whether before or after arrest, in response to interrogation by any person then known by Dr. Kaloyeros to be a government agent, if the prosecution intends to use that statement at trial. *See* Fed. R. Crim. P. 16(a)(1)(A).

## II.    Documents and Tangible Objects

1.    All books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, that were obtained from or belong to Dr. Kaloyeros, or that belonged to Dr. Kaloyeros at the time of the alleged offenses, or that belong or belonged to any agent of Dr. Kaloyeros or any entity allegedly associated with Dr. Kaloyeros. *See* Fed. R. Crim. P. 16(a)(1)(E)(iii).

2.    All books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, that the government intends to use at trial in its case-in-chief. *See* Fed. R. Crim. P. 16(a)(1)(E)(ii). We request that any materials in this category be specifically identified from among the materials produced pursuant to Dr. Kaloyeros' other Rule 16 and *Brady* requests, both to enable counsel to prepare effectively for trial and to afford Dr. Kaloyeros opportunity to move to suppress any evidence the prosecution intends to use in its case-in-chief. *See* Fed. R. Crim. P. 12(b)(3) and 12(d)(2).

3.    All books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, that are material to the preparation of Dr. Kaloyeros' defense, *see* Fed. R. Crim. P. 16(a)(l)(E)(i), including, but not limited to, those items set forth in paragraphs II.4 to II.12 below.

4.    All mailings, wire communications, bank transfers, checks or other documents that are alleged as the basis for Counts 1, 2, and 4. For each count, separately identify the mailing, wire communication, bank transfer, check or other document described in that count.

5.    All documents relating to Dr. Kaloyeros or the conduct alleged in the Indictment that were introduced as exhibits before the grand jury. We request that any materials in this category be specifically identified from among the materials produced pursuant to the Dr. Kaloyeros' other Rule 16 and *Brady* requests.

6.    All documents relating to Dr. Kaloyeros or the conduct alleged in the Indictment that were obtained by or for the grand jury or pursuant to any grand jury or trial subpoena.

7.    All documents relating to Dr. Kaloyeros or the conduct alleged in the Indictment obtained from any witness who testified before the grand jury, or who was interviewed or consulted during the course of the grand jury investigation.



8.  All documents relating to Dr. Kaloyeros or the conduct alleged in the Indictment that were obtained by any search or seizure pursuant to a search warrant or otherwise.

9.  All documents relating to Dr. Kaloyeros or the conduct alleged in the Indictment obtained from any federal, state or local governmental, regulatory or legislative body or agency.

10. All documents relating to press releases or press conferences concerning Dr. Kaloyeros or the investigation of him or others charged in the Indictment, and all other documents relating to any contacts between the government and representatives of the media concerning Dr. Kaloyeros or others charged in the Indictment, or the investigation of Dr. Kaloyeros or others charged in the Indictment.

11. All documents relating to the reputation of Dr. Kaloyeros, including, without limitation, any documents relating to Dr. Kaloyeros' reputation for honesty, integrity, or competence.

12. All documents relating to any interviews, reports, analyses, or other documents provided by, or to, the U.S. Attorney's Office for the Southern District of New York, the Department of Justice, the FBI, or any state or local government or regulatory body or agency, in connection with the investigation and prosecution of Dr. Kaloyeros.

## III.  *Brady* and *Giglio* Material

Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, including *Giglio v. United States*, 405 U.S. 150 (1972), *United States v. Agurs*, 427 U.S. 97 (1976), *United States v. Bagley*, 473 U.S. 667 (1985), *Kyles v. Whitney*, 514 U.S. 419 (1995), and New York Rule of Professional Conduct 3.8, Dr. Kaloyeros requests immediate identification and disclosure of all documents and information (in whatever form) that are favorable to his defense or that would tend to exculpate Dr. Kaloyeros with respect to the charges in the Indictment, that would tend to impeach the witnesses against Dr. Kaloyeros, or that are relevant to the issue of sentencing, including but not limited to the following:

1.  Any document or information indicating or tending to establish that any of the allegations in the Indictment are not true.

2.  Any document or information indicating or tending to establish that the conduct that is the subject of the Indictment did not violate government laws, regulations, standards, or established business practices.

3.  Any documents or information indicating or tending to establish that Dr. Kaloyeros did not instigate, control, authorize, approve, or acquiesce in any conduct that is the subject of the Indictment.

4.  Any document or information indicating or tending to establish that:



   a.  Dr. Kaloyeros engaged in any conduct that forms the basis of the Indictment in reliance upon advice provided by counsel.

   b.  Dr. Kaloyeros engaged in any conduct that forms the basis of the Indictment with the good faith belief that his conduct did not constitute a crime.

   c.  No state procurement rules or FSMC policy applied to the transactions alleged in the Indictment.

   d.  No state procurement rules or FSMC policy prohibited the pre-RFP contact with developers alleged in the Indictment.

   e.  The Buffalo and Syracuse RFPs were non-binding.

   f.  The Buffalo and Syracuse RFPs were not tailored to any particular developer.

   g.  The Buffalo and Syracuse RFPs were developed and/or reviewed by FSMC staff, Board member(s), and inside and outside counsel.

   h.  Defendants, witnesses, or their counsel have represented to the Government that no wrongdoing occurred in connection with the Buffalo and Syracuse RFPs.

   i.  FSMC was not defrauded by Dr. Kaloyeros.

   j.  FSMC suffered no economic harm in connection with the transactions alleged in the Indictment.

   k.  FSMC never faced even the potential for economic harm in connection with the transactions alleged in the Indictment.

5. Any document or information that may be used to impeach any potential government witness, or any person whose statements will be introduced pursuant to Fed. R. Evid. 801(d)(2)(C), (D), or (E), including but not limited to:

   a.  Any document reflecting a communication between the government or an agent of the government and a potential government witness or that witness's attorney or agent, including, but not limited to, memoranda, voicemails, emails, text messages, and instant messenger conversations.

   b.  Any document or information relating to any conviction, arrest, or criminal record of, and any criminal charge brought against, any potential government witness;

   c.  Any document or information relating to promises, consideration, or inducements made to any potential government witness, whether directly to the witness or



indirectly to the witness' attorney, friends, family, employer, business associates, or other culpable or at risk third-party. "Consideration" means anything of value or use, including immunity grants, whether formal or informal, "queen for a day" or proffer letters, witness fees, transportation or relocation assistance, money, dropped or reduced charges or suggestions of favorable treatment with respect to any federal, state or local criminal, civil, or administrative matter, expectations of downward departures or motions for reduction of sentence, considerations regarding forfeiture of assets, or stays of deportation or other immigration status considerations;

d.  Any document or information tending to show the bias of a potential government witness, including animosity toward Dr. Kaloyeros, animosity toward a group of which Dr. Kaloyeros is a member or with which Dr. Kaloyeros is affiliated, a relationship with the alleged victim, or known but uncharged criminal conduct that may provide an incentive to curry favor with a prosecutor;

e.  Any document or information affecting the reliability of a potential government witness's testimony, including known alcohol or substance abuse, mental health issues or other issues that could affect the witness's ability to perceive and recall events;

f.  Any document or information relating to inconsistencies in statements given by any potential government witness;

g.  Any document or information relating to inconsistencies between agents' and/or prosecutors' rough notes and FBI 302s or other memoranda of interviews of any potential government witness;

h.  Any document or information bearing adversely on the character or reputation for truthfulness of any potential government witness; and

i.  Each specific instance of conduct from which it could be inferred that any potential government witness is untruthful.

6.  The date of and participants in each and every interview (including not only interviews conducted by the U.S. Attorney's Office for the Southern District of New York, but also interviews conducted by any third parties), debriefing, "queen for a day" session, proffer, deposition, or other statement or description of the alleged facts made by each potential government witness (whether directly or indirectly, such as a proffer made by counsel). In addition, please specify, as to each such witness, the first date on which the witness made any allegation that Dr. Kaloyeros engaged in any allegedly unlawful conduct or any conduct alleged in the Indictment.



As you are aware, New York has adopted Rule of Professional Conduct 3.8, entitled "Special Responsibilities of Prosecutors and Other Government Lawyers," which provides that a prosecutor shall "make timely disclosure to counsel for the defendant . . . of the existence of evidence or information known the prosecutor or other government lawyer that tends to negate the guilty of the accused, mitigate the degree of the offense, or reduce the sentence. . . ." Rule 3.8(d). The Supreme Court has recognized that Rule 3.8 imposes a higher standard on prosecutors than the standards mandating disclosure of exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963). *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995) ("[*Brady*] requires less of the prosecution than the ABA Standards for Criminal Justice, which call generally for prosecutorial disclosures of any evidence tending to exculpate or mitigate."); ABA Standards for Criminal Justice, Prosecution Function and Defense Function 3-3.11(a) (3d ed. 1993) ("A prosecutor should not intentionally fail to make timely disclosure to the defense, at the earliest feasible opportunity, of the existence of all evidence or information which tends to negate the guilt of the accused or mitigate the offense charged or which would tend to reduce the punishment of the accused"); ABA Model Rule of Professional Conduct 3.8(d) (1984) ("The prosecutor in a criminal case shall . . . make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense").

We contend that the foregoing categories of information constitute *Brady* and Rule 3.8(d) material, and that disclosure should take place immediately. Dr. Kaloyeros further requests that the government identify with particularity and provide copies of all materials that qualify as *Brady* and Rule 3.8 material, as described above. Please advise us promptly whether the government will be producing *Brady* material immediately even if it is contained in what might otherwise be considered as *Jencks* material, or whether you take the position that you are not obligated to produce such material at this time.

We also request the underlying source material for any *Brady* and Rule 3.8(d) information, as opposed to any summary letter or paraphrased description of the information. Please advise us promptly whether the government will not be producing underlying source material.

For purposes of the *Brady* doctrine, "the format of the information does not determine whether it is discoverable." Department Memorandum for Department Prosecutors Providing Guidance for Prosecutors Regarding Criminal Discovery, at 6 (Jan. 4, 2010). For example, material exculpatory information that is provided "during a conversation with an agent or a witness is no less discoverable than if that same information were contained in an email." *Id.* Similarly, the Second Circuit has recognized that attorney proffers are equally subject to *Brady* obligations as witness proffers. *States v. Triumph Capital Group, Inc.*, 544 F.3d 149, 157, 165 (2d Cir. 2008)(recognizing that "[a]n attorney proffer apprises the government of what the client would be able to provide by way of testimony" and finding a Brady violation where the Government failed to turn over notes from an attorney proffer). We therefore expect that all such information will be memorialized and produced to Dr. Kaloyeros.



## IV.  Purportedly Privileged Material

Dr. Kaloyeros requests that you identify any person or entity that has asserted any attorney-client privilege, work-product privilege, common-interest privilege, or any other privilege as the basis for withholding or not producing, in whole or in part, any documents to the government or the grand jury during the investigation.  Dr. Kaloyeros further requests that you provide all documents (including all privilege logs) with respect to the assertion of or challenge to any such claimed privileges.

## V.  Criminal Records

Pursuant to Rule 16(a)(1)(D) of the Federal Rules of Criminal Procedure, Dr. Kaloyeros requests copies of his prior criminal record, if any.

## VI.  *Jencks* Material

Pursuant to the Jencks Act, 18 U.S.C. § 3500 and Rule 26.2 of the Federal Rules of Criminal Procedure, Dr. Kaloyeros requests that the government provide a list of the names and addresses of all witnesses that the government intends to call in its case-in-chief and all statements of those witnesses in the possession, custody, or control of the government or any other government entity, including, but not limited to, notes of interviews, FBI 302s or other summaries prepared by government attorneys or agents, and grand jury transcripts and any other witness statements.  We request that the government begin providing this material as soon as possible, or in any event no later than ninety (90) days prior to the start of trial.

## VII.  Scientific Evidence

Pursuant to Rule 16(a)(1)(F) of the Federal Rules of Criminal Procedure, Dr. Kaloyeros requests documentation relating to all requests for, and the results of, physical or mental examinations, scientific tests, or experiments that were conducted in connection with the investigation of the charges contained in the indictment.  This includes, but is not limited to:

1.  all forensic examinations of any computer hard drive or handheld mobile device that Dr. Kaloyeros possessed or to which Dr. Kaloyeros had access;

2.  all handwriting exemplars, handwriting samples, handwriting or document analyses, and all documents examined or used in or related to such analyses;

3.  all fingerprint and palm print exemplars, fingerprint samples, comparisons, and opinions of fingerprint experts, and all documents examined or used in connection with, or that relate to, those opinions; and

4.  all polygraph examinations, psychological stress examinations, hypnotic procedures, or any other scientific procedures devised to determine whether a subject is telling the truth,



or to refresh a witness' memory, and all documents that refer or relate to such examinations.

## VIII.   Other Crimes Evidence

Pursuant to the Fifth and Sixth Amendments to the United States Constitution and Rules 403 and 404(b) of the Federal Rules of Evidence, Dr. Kaloyeros requests that the government disclose all evidence of similar crimes, wrongs, or acts, allegedly committed by Dr. Kaloyeros (or any person alleged to have been acting pursuant to his instructions or on his behalf), upon which the government intends to rely to prove motive, scheme, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

## IX.   Suppression Issues

1.   As a predicate to potential motions pursuant to Fed. R. Crim. P. 12, Dr. Kaloyeros requests that he be informed:

   a.   Whether the government intends to offer into evidence any statement made by Dr. Kaloyeros or any family member, and the substance of any such statement;

   b.   Whether any evidence in the government's possession, custody, or control was obtained by a search and seizure conducted by the government, and a description of such evidence;

   c.   Whether any evidence in the government's possession, custody, or control was obtained through electronic or mechanical surveillance, including without limitation, wiretaps, body wires, pen registers, and/or surveillance of telephone calls, and a description of such evidence;

   d.   Whether any evidence in the government's possession, custody, or control was obtained through the use of a beeper or other tracking device, and a description of such evidence;

   e.   In connection with any tape recording, wiretaps, or other surveillance of Dr. Kaloyeros during the investigation of the allegations of the Indictment or any related allegations, Dr. Kaloyeros seeks:

      i.   the names and addresses of all such persons whose personal or business telephones the government tapped or monitored, or whose conversations or actions the government monitored by other means without the person's knowledge;

      ii.   transcripts or other records of the statements or conversations monitored;



   iii.  the original recorded tapes created during such surveillance;

   iv.  the procedures used to conduct such surveillance; and

   v.  the authority under which such surveillance was conducted.

  f.  Whether any evidence in the government's possession, custody, or control was obtained through a mail cover and/or trash cover and a description of such evidence; and

  g.  The identities of any informant or undercover agent employed by the government during its investigation of the charges of the Indictment.

2.  Dr. Kaloyeros requests that the prosecution:

  a.  disclose whether it intends to introduce any evidence obtained in the manner described in Section IX(1)(a)-(f); and

  b.  if it does, identify the evidence the government intends to introduce and its source.

3.  Dr. Kaloyeros requests that the prosecution disclose whether it intends to offer in its case-in-chief any of the following, and that it provide the substance of any such statement:

  a.  Any statement as to which Dr. Kaloyeros allegedly manifested his adoption or belief in its truth. *See* Fed. R. Evid. 801(d)(2)(B).

  b.  Any statement made by another which was purportedly authorized by Dr. Kaloyeros. *See* Fed. R. Evid. 801(d)(2)(C).

  c.  Any statement made by an agent or servant of Dr. Kaloyeros concerning a matter within the scope of his agency or employment made during the existence of such a relationship. *See* Fed. R. Evid. 801(d)(2)(D).

  d.  Any statement made by an alleged co-conspirator of Dr. Kaloyeros during the course and in furtherance of any alleged conspiracy. *See* Fed. R. Evid. 801(d)(2)(E).

## X. Charts and Summaries

Pursuant to Fed. R. Evid. 1006, Dr. Kaloyeros requests that he be advised whether the government will seek to offer any chart, summary, or calculation in evidence. If so, Dr. Kaloyeros further requests that: (1) such charts, summaries, and calculations be produced, and (2) writings,



recordings, or other information on which such charts, summaries, or calculations are based be made available for inspection and copying.

## XI.    Electronically Stored Information

Dr. Kaloyeros requests that the government comply with the "Recommendations for Electronically Stored Information (ESI) Discovery Production in Federal Criminal Cases" issued by the Department of Justice and Administrative Office of the U.S. Courts Joint Working Group on Electronic Technology in the Criminal Justice System in February 2012.  Among other things, Dr. Kaloyeros makes the following requests:

1.    The government should produce ESI received from third parties in the format it was received.  However, if the government has further processed ESI received from third parties, such as by adding load files, converting native files to TIFF images, extracting metadata or other coding, or making electronic files searchable, the government should produce such enhanced ESI in discovery to save Dr. Kaloyeros the expense of replicating this work.  Dr. Kaloyeros does not seek any government work product by this request.

2.    The government should produce a table of contents describing the general categories of information available as ESI discovery in order to expedite Dr. Kaloyeros' review of discovery, and avoid discovery disputes, unnecessary expense, and undue delay.  Further, the government should produce the cover letters that accompanied and described the third party productions of ESI and other documents to facilitate Dr. Kaloyeros' review.

3.    For all ESI produced from a seized, searched, or subpoenaed third-party digital device (e.g., computer, hard drive, thumb drive, CD, DVD, cell phone, Blackberry, iPhone, Android, smart phone, or personal digital assistant), the government should identify the digital device that held the ESI, identify the device's owner or custodian, and identify the location where the device was seized, searched or from where it was produced.

4.    The government should produce any materials received in paper form in a converted digital format as electronic files that can be viewed and searched.  These materials should be produced in multi-page TIFF and OCR format where each document is one file that may have multiple pages.  Alternatively, a less preferable option would be production in multi-page, searchable PDF format.  Under no circumstances should paper materials be converted into single-page TIFF images without document breaks.

5.    All production of ESI should maintain parent-child relationships between documents, such as where an email (the parent document) has attachments (the child documents).



## XII.   Grand Jury

We request that the government disclose the empanelment and adjournment dates of each grand jury that heard evidence concerning this case and the legal instructions provided to the grand jury before the Indictment was returned.

\*          \*          \*

Please let us know promptly whether there are any requests set forth in this letter with which you decline to comply. We are available to discuss any of the foregoing requests at your convenience. We reserve the right to supplement these requests as we review the discovery material and prepare for trial.

Thank you.

Very truly yours,

Michael C. Miller
*Counsel for Dr. Kaloyeros*

cc:    AUSAs Robert Boone, David Zhou, Matthew Podolsky (via e-mail)