

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 15, 2017

**BY ECF**

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States* v. *Joseph Percoco, et al.*, S2 16 Cr. 776 (VEC)

Dear Judge Caproni:

    The Government respectfully writes in response to defendant Alain Kaloyeros's letter (the "Kaloyeros Letter") [Dkt. No. 394], dated December 13, 2017, regarding his claim, first advanced at oral argument on December 6, 2017, that the Donnelly Act does not provide for criminal, as opposed to civil, liability for what Kaloyeros terms "vertical bid rigging." As set forth below, Kaloyeros has provided no authority for this position, and his view is flatly contradicted by the law.

    In his Motion for Suppression of Search Warrant Evidence ("Kaloyeros's MTS") [Dkt. No. 172], Kaloyeros argued, among other things, that the forensic image of his iPhone created by the New York State Attorney General's Office ("NYAG") pursuant to a judicially authorized searched warrant (the "State Warrant") should be suppressed because, as relevant here, the State Warrant lacked the support of probable cause. (Kaloyeros's MTS 14-19.) In particular, Kaloyeros argued that "a vertical bid rigging scheme between a customer . . . and a vendor" does not violate the Donnelly Act. (*Id.* at 14.)

    Observing that the State Warrant called only for the search and seizure of records relating to criminal violations of New York State's Donnelly Act, and in particular in relation to Loughlin Street Student Housing, Nanofab West, and the ZEN Building (in Albany, New York), the Government responded to Kaloyeros's motion by stating that it intended to obtain its own search warrant for the iPhone, rather than rely on the State Warrant. (*See* Gov.'s Opp'n 112 n.37 [Dkt. No. 264].) A federal warrant would—and does—provide a valid basis apart from the so-called "plain view exception" to the warrant requirement for the introduction of evidence obtained from the phone in a trial against Kaloyeros on federal wire fraud charges, and would—and did—permit the Government to run additional searches for evidence particular to the federal crimes charged.[1]

---

    [1] As stated at oral argument, the plain view exception would provide an additional basis for the proper introduction of documents not related to the Donnelly Act charges at a federal trial. (Tr. 19:10-21:20.) *See United States* v. *Lustyik*, 57 F. Supp. 3d 213, 232 (S.D.N.Y. 2014) (applying the plain view exception to an email search warrant).

On November 7, 2017, the Honorable Henry B. Pitman, United States Magistrate Judge, issued a warrant (the "Federal Warrant"), permitting the search of the forensic image of the iPhone created by and in the possession of NYAG.

On November 9, 2017, the Government filed a letter (the "November 9 Letter") [Dkt. No. 353] setting forth its position that the search and seizure of the image of the iPhone was proper. Specifically, the Government explained that the Federal Warrant on which it relied was valid, and that the iPhone was properly seized by state authorities pursuant to the State Warrant. Further, the Government argued that the State Warrant was supported by probable cause, because—contrary to Kaloyeros's contention—a vertical restraint on trade may constitute a violation of the Donnelly Act. (November 9 Letter at 2 (relying on *Leegin Creative Leather Prods. Inc.* v. *PSKS, Inc.*, 551 U.S. 877, 907 (2007); *Anheuser-Busch* v. *Abrams*, 71 N.Y.2d 327, 331-33 (1988); *Meyer* v. *Kalanick*, 174 F. Supp. 3d 817, 822-29 (S.D.N.Y. 2016)).)

At oral argument on December 6, 2017, Kaloyeros advanced the novel argument—not previously raised in his papers—that vertical restraints on trade may constitute civil but not criminal violations of the Donnelly Act.[2] (Tr. 8:4-10.) In response, the Government offered three cases in which a vertical restraint on trade was the subject of criminal prosecution. In his December 13 letter, Kaloyeros attempts to distinguish these cases. (*See* Kaloyeros Letter 1-3.) Kaloyeros's attempts to distinguish these cases on the facts are unconvincing and, in any case, do not address the key and indisputable point that these cases represent: vertical restraints on trade may indeed constitute criminal violations of the Donnelly Act.

First, Kaloyeros argues that the three cases cited by the Government at oral argument—*People* v. *Wiesner*, Indictment No. 1136A/2014, Slip Op. (N.Y. County Ct. Monroe County July 27, 2015); *People* v. *Kessler*, No. 11307/95, 1996 WL 903952 (N.Y. Sup. Ct. N.Y. County Dec. 2, 1996); *People* v. *Partridge*, No. 4352/86, 1987 WL 92057 (N.Y. Sup. Ct. N.Y. County Mar. 27, 1987)—"involve[d] bribes or other *quid pro quos* given to the administrator or seller." (Kaloyeros Letter 1.) This fact is of no moment. A bribe or quid pro quo is not an element of a Donnelly Act violation; rather the Donnelly Act criminalizes entering into a "contract, agreement, arrangement or combination whereby . . . [c]ompetition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained . . . ." N.Y. Gen. Bus. Law §§ 340, 341. Indeed, as the Court in *Wiesner* explained, without reference to any quid pro quo, "where administrators charged with the duty of competitive bidding for contracts arrange with service providers that one service provider is effectively the only

---

[2] Kaloyeros also continues to insist that the Government has waived any argument regarding the validity of the State Warrant, relying on *United States* v. *Acosta*, No. 12 Cr. 224 (PGG), 2013 WL 1890337 (S.D.N.Y. May 6, 2013). As an initial matter, *Acosta* concerned the potential waiver of a motion to suppress for failure to raise the ground for suppression in the suppression motion, and the court in *Acosta* did not find that the defendant's argument was waived. *Id.* at *6 n.6. In any case, the Government has made no such waiver here. Rather, the Government indicated that it would obtain its own warrant, upon which it would rely. (*See* Gov.'s Opp'n 112 n.37 [Dkt. No. 264].) In support of that reliance, the Government contends that the iPhone was properly seized pursuant to the State Warrant, which itself was valid.

competitor for the contract put out to bid, a *per se* anticompetitive act of bid rigging is committed . . . ." *Wiesner*, Slip Op. at 3.

Second, Kaloyeros argues that because the courts in these cases determined that the conduct at issue was *per se* illegal and, in another case with different facts, NYAG argued that a vertical restraint of trade was not *per se* illegal, that position somehow leads to the conclusion that vertical restraints of trade are not illegal at all. (Kaloyeros Letter 2 (relying on *Anheuser-Busch*, 71 N.Y.2d at 331).) Kaloyeros does not explain how NYAG's position in *Anheuser-Busch* changes the meaning of the Donnelly Act, particularly where courts continued to find certain vertical restraints of trade *per se* illegal after *Anheuser-Busch*. *See Wiesner*, Slip Op. at 3; *Kessler*, 1996 WL 903952, at *6; *People* v. *Schwartz*, 554 N.Y.S.2d 686, 687 (2d Dep't 1990). Regardless, vertical restraints of trade, even if not *per se* illegal, may still be illegal under the so-called "rule of reason." *See, e.g.*, *People* v. *E. Ambulance Serv.*, 493 N.Y.S.2d 507, 509 (4th Dep't 1984). In fact, *Partridge* makes that very point. *Partridge*, 1987 WL 92057, at *5.

Third, Kaloyeros argues that "the Government's interpretation of these cases would put the Donnelly Act at odds with its federal counterpart without any justification." (Kaloyeros Letter 2.) As an initial matter, Kaloyeros is wrong—a vertical restraint of trade may indeed by unlawful under the Sherman Act. *See, e.g.*, *Anderson News, L.L.C.* v. *Am. Media, Inc.*, 680 F.3d 162, 183 (2d Cir. 2012) ("In order to establish a conspiracy in violation of § 1 [of the Sherman Act], whether horizontal, vertical, or both, proof of joint or concerted action is required."); *Meyer* v. *Kalanick*, 174 F. Supp. 3d 817, 822-29 (S.D.N.Y. 2016). Indeed, Kaloyeros's reasoning appears to be that, in his view, the allegations contained in the State Warrant constitute "vertical bid-rigging"—a term he does not define—and that in some cases conduct described as "vertical bid-rigging" has not amounted to an unreasonable restraint on trade. (Kaloyeros Letter 2.) The question in assessing the validity of the State Warrant, however, is simply whether, based on the facts contained in the State Warrant application, there was probable cause to believe that Kaloyeros had entered into a "contract, agreement, arrangement or combination whereby . . . [c]ompetition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained"—a conclusion amply supported by the application and properly reached by the authorizing State judge. N.Y. Gen. Bus. Law. § 340. Finally, Kaloyeros has not explained how divergence from the Sherman Act can undermine the clear law of New York State, as expressed, for example, in *Wiesner*, *Kessler*, and *Partridge*.

Fourth, Kaloyeros suggests that prosecution under the "rule of reason" would "produce serious due process concerns." (Kaloyeros Letter 3.) Kaloyeros does not, however, offer evidence of any such concern, other than to observe that such prosecutions—like any prosecution—would be "highly fact-dependent." (*Id.*) In fact, courts have long held that criminal prosecutions based on the rule of reason do not violate any due process rights. *See United States* v. *Morgan Drive Away, Inc.*, No. 697-83, 1974 WL 830, at *2 (D.D.C. Jan. 24, 1974) ("The history of the Sherman Act reveals that its criminal provisions, as applied by the courts, have been consistently held not to violate a defendant's due process rights, notwithstanding the rule of reason, because there is sufficient certainty regarding the economic harm which the statute proscribes." (citing *United States* v. *Trenton Potteries Co.*, 273 U.S. 392 (1927); *Nash* v. *United States*, 229 U.S. 373 (1913))).

Finally, Kaloyeros has offered no authority for the proposition that the Donnelly Act makes a distinction between conduct that may give rise to civil liability and conduct that may give rise to criminal penalties. The plain language of the act makes clear that no such distinction exists. *See*

December 15, 2017
Page 4

N.Y. Bus. Law §§ 340-41; *see also United States* v. *U.S. Gypsum Co.*, 438 U.S. 422, 438 (1978) ("Both civil remedies and criminal sanctions are authorized [by the Sherman Act] with regard to the same generalized definitions of the conduct proscribed—restraints of trade or commerce . . . .").

      For the reasons set forth above, Kaloyeros's argument that the Donnelly Act does not provide for criminal liability for "vertical bid rigging" is without merit, and his motion to suppress should be denied.

                                          Respectfully submitted,

                                          JOON H. KIM
                                          Acting United States Attorney

                                        By: /s/
                                            Janis Echenberg/Robert Boone/
                                            David Zhou/Matthew Podolsky
                                            Assistant United States Attorneys
                                            (212) 637-2597/2208/2438/1947

cc:  Counsel for all defendants (via ECF)