UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ALAIN KALOYEROS,<br>STEVEN AIELLO,<br>JOSEPH GERARDI, and<br>LOUIS CIMINELLI. | Case No. S2 16-cr-00776 (VEC) |

**OPPOSITION TO THE GOVERNMENT'S MOTION TO QUASH DEFENDANT ALAIN KALOYEROS'S RULE 17 SUBPOENA TO THE METROPOLITAN CORRECTIONAL CENTER**

Rule 17 implements the Sixth Amendment's guarantee of compulsory process by authorizing defendants to issue subpoenas *duces tecum*. *In re Martin Marietta*, 856 F.2d 619, 621 (4th Cir. 1988); Alan Wright et al., 2 Fed. Prac. & Proc. Crim. § 271 (updated 2018). For this reason, trial subpoenas are issuable as of right, Fed. R. Crim. P. 17(a), (c)(1),[1] and are subject to potential quashal only "if compliance would be unreasonable or oppressive," Fed. R. Crim. P. 17(c)(2).

On May 17, 2018, Dr. Kaloyeros issued a trial subpoena requiring that the Metropolitan Correctional Center ("MCC") produce in court certain impeachment and substantive evidence on the first day of trial. Dkt. No. 711-1 ("the Subpoena"). The Subpoena was intentionally crafted to avoid burden, asking for many of the same documents and recordings that are routinely produced to the U.S. Attorney's Office upon mere request. The Government informed Dr. Kaloyeros that it "anticipate[d] moving to quash on behalf of the Government and to be joined by the MCC." When asked its basis for quashing the Subpoena, the Government said nothing about any potential burden on MCC. Rather, it noted only that it sought to quash the Subpoena on the grounds that Rule 17 is "not a discovery device." On June 4, the Government indicated that it was "prepared to file a motion to quash" and asked, in light of the Government's decision not to call Todd Howe, if Dr. Kaloyeros "still intended to enforce the subpoena." At the status conference on June 6, counsel for Dr. Kaloyeros confirmed on the record that Dr. Kaloyeros intended to enforce the Subpoena. That day, the Government moved to quash. Prior to filing its brief, the Government did not invite Dr. Kaloyeros to meet and confer with respect to

---

[1] *See United States v. Reyes*, 162 F.R.D. 468, 469 (S.D.N.Y. 1995) (explaining the distinction between trial subpoenas "governed by the provisions of Rule 17(a) and 17(b)" and early-return subpoenas governed by rules including the *Nixon* test).

the Subpoena, nor did it mention anything about the Subpoena's requests being burdensome on MCC. MCC also did not invite Dr. Kaloyeros to meet and confer or contact Dr. Kaloyeros directly.

As an initial matter, consistent with this Court's practice in *United States v. Silver*, Dr. Kaloyeros requests the opportunity to meet and confer with counsel for MCC to see whether MCC's concerns can be resolved. In *Silver*, a non-party witness similarly moved to quash without first meeting and conferring. Letter from Justin Shur, *United States v. Silver*, No. 15-cr-93 (VEC), Dkt. No. 101 (S.D.N.Y. Oct. 23, 2015). Rather than ruling on the motion to quash, the Court ordered the parties to meet and confer to attempt to resolve the dispute regarding Mr. Silver's subpoena. Order, *Silver*, Dkt. No. 104 (Oct. 23, 2015). The parties successfully resolved the dispute within four days, mooting the motion to quash. Endorsed Letter, *Silver*, Dkt. No. 107 (Oct. 27, 2015).[2]

In the alternative, the Court should deny the Government's motion because Dr. Kaloyeros served a targeted subpoena **returnable at trial** that is likely to yield documents and information that would support a central theme of his defense—*i.e.*, Todd Howe is a serial fraudster who was never fully honest with his clients, including Dr. Kaloyeros, about who he was doing business with and whose interests he was representing at a particular moment. The Subpoena seeks documents created over the last four **months** that are undoubtedly centrally maintained by MCC.

---

[2] A pre-litigation discussion of burden concerns is consistent with the origins of Rule 17 subpoenas in civil subpoenas. *See* Fed. R. Crim. P. 17 advisory comm. note (1944) ("This rule is substantially the same as rule 45(b) of the Federal Rules of Civil Procedure"). Courts commonly ask parties to meet and confer in an attempt to avoid litigating civil subpoenas. *See, e.g.*, *UMB Bank, N.A. v. Sanofi*, No. No. 15-cv-8725, 2017 WL 3738457, at *3 (S.D.N.Y. Aug. 10, 2017) (requiring parties to meet and confer about whether burden concerns can be alleviated despite lack of explicit meet-and-confer requirement); *cf.* Local Crim. R. 16.1 (requiring meet and confer before filing criminal discovery motions).

And to the extent the Court finds Dr. Kaloyeros's request to be unduly burdensome, Dr. Kaloyeros has provided a proposed modification below.

I.   **Legal Standard**

Rule 17(c)(2) makes clear that a Court **may** quash a subpoena *duces tecum* when compliance "would be unreasonable and oppressive." The Government seeks to add an obstacle by also requiring that the Subpoena meet the relevancy, admissibility, and specificity requirements placed on early-return subpoenas in *United States v. Nixon*, 418 U.S. 683 (1974). Gov't's Mot. to Quash Def. Alain Kaloyeros's Rule 17 Subpoena to the Metropolitan Correctional Center ("Motion") at 4–5, Dkt. No. 711 (June 6, 2018). The Government's argument misses the mark by construing the Subpoena as returnable prior to trial.[3]

In *Nixon*, the Court's analysis related specifically to "production ***prior to trial.***" *Id.* at 699 (emphasis added). Indeed, the *Nixon* test was based on Judge Weinfeld's analysis in *United States v. Iozia*, which set forth the standards for when "good cause" existed such that a court "may direct the production ***prior to trial*** of books, papers, documents, or objects designated in the subpoena and upon their production may permit inspection." 13 F.R.D. 335, 339 (S.D.N.Y. 1952) (emphasis added).

In *Iozia*, the court focused precisely on this distinction, holding that pre-trial production of documents was not required under its four-factor analysis (what became the *Nixon* test), but that the ***same*** documents would be produced to the defense at trial. *See, e.g., id.* at 340 (holding

---

[3] The Subpoena required production on June 11, 2018, which was then the first day of trial before the Government received an adjournment of the trial date. Dr. Kaloyeros consents to modifying the Subpoena to require production to the Court on June 18, 2018 (the first day of trial) and disclosure to Dr. Kaloyeros when the Government first references Mr. Howe's out-of-court statements in opening statements or by offering such an email into evidence.

that although a request for government files had "every appearance of a fishing expedition, . . . [s]hould any of the persons testify upon the trial, the documents will be available for inspection by the Court in camera to determine whether they contain matter helpful to the defense"); *see also United States v. Gel Spice Co.*, 601 F. Supp. 1214, 1224–25 (E.D.N.Y. 1985) ("If the subpoena were still a trial subpoena, there would be no question that the defendants would be required to produce the documents requested on the day of trial.  However, . . . the government requested that the documents be produced ***prior to trial*** . . . [applying *Nixon* test for returnable prior to trial]."). Thus, the Court should only quash the Subpoena if "compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).

Of course, even if *Nixon* applied, the Subpoena is a good faith request for specific categories of documents that are evidentiary and relevant and not otherwise procurable by the defense, rather than a general fishing expedition to see what sort of documents might turn up.[4] In short, the Subpoena: (1) does not impose an undue burden on MCC and (2) represents a good faith effort by Dr. Kaloyeros to attain documents that are evidentiary and highly relevant to his defense making the Subpoena valid even under *Nixon*.

---

[4] As the Southern District has made clear, subpoenas for "all communications" between involving a relevant party and pertaining to relevant topics pass the *Nixon* test. *See, e.g.*, *United States v. Nguyen*, 507 F. App'x 64, 66 (2d Cir. 2013) (upholding a lower court decision requiring the production "[a]ny and all appointment books, calendars, and diaries from 2006 through 2010." (citation omitted)); *United States v. Nachamie*, 91 F. Supp. 2d 552, 563 (S.D.N.Y. 2000) (holding that *Nixon* was satisfied by requests for "(1) all communications with Medicare regarding patients referred by co-defendants during the time period of the alleged conspiracy; (2) records of communications with any billing service used by the doctor or by entities controlled by the doctor; and (3) ***records of communications with seven identified individuals*** . . . and one entity, from 1995 to the present." (emphasis added)); *United States v. Rajaratnam*, 753 F. Supp. 2d 317, 322 (S.D.N.Y. 2011) (finding requests for "[a]ll documents reflecting communications" between three named individuals and "any agent or employee" to satisfy *Nixon*); *United States v. Vasquez*, 258 F.R.D. 68, 75 (E.D.N.Y. 2009) (finding that a request for "any and all" police records relating to three homicides to satisfy *Nixon*).

## II. The Subpoena is Not Unreasonable or Oppressive Because It Does Not Impose an Undue Burden.

The Subpoena seeks documents that are routinely requested and produced to the U.S. Attorney's Office in a matter of days. The Government bemoans Dr. Kaloyeros's requests as "unreasonable and oppressive,"[5] but it does not provide a declaration from MCC or any other rationale for this sudden change in MCC's practice. The Subpoena provided approximately three weeks for production. And instead of MCC contacting Dr. Kaloyeros to discuss resolution of any burden concerns, the Government filed a motion to quash nineteen days later.

To support its burden argument, the Government faults the Subpoena's requests for a lack of specificity. Motion at 6–7. The Subpoena's requests, however, were precisely targeted at limiting the supposed burden imposed on MCC by seeking documents that are likely centrally maintained and easily compiled by MCC. Courts in this district have granted similar requests without hesitation. *See, e.g.*, *United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008) (granting a subpoena to Bureau of Prisons requesting all recordings of telephone conversations held by three parties while in custody in part because trial was about to begin); *United States v. James*, No. 02-cr-778, 2007 WL 914242, at *29 (E.D.N.Y. Mar. 21, 2007) (finding that a request for inmate "visitor, disciplinary, and mental health records" over a ten-year period satisfied the *Nixon* test).

To the extent the MCC can identify specific requests that it believes are burdensome and oppressive, it should say so. With respect to Requests 1 and 2, Mr. Howe has been in the custody of the MCC for only a few months with limited access to visitors, the telephone, and e-mail. Courts in this circuit have regularly upheld significantly broader requests. *See, e.g.*,

---

[5] Motion at 8 n.2.

*Nguyen*, 507 F. App'x at 66 (upholding a lower court decision requiring the production "[a]ny and all appointment books, calendars, and diaries from 2006 through 2010."); *Nachamie,* 91 F. Supp. 2d at 563–64 (finding that a subpoena requesting "records of communications" between "seven identified individuals" and one entity during a five-year period satisfied *Nixon*).[6] With respect to Request 3, Dr. Kaloyeros is willing to meet and confer to minimize burden and, if the Court finds the request burdensome, would agree to limit Request 3 to: (1) statements by Mr. Howe related to the instant proceedings and related events; (2) statements by Mr. Howe referencing, regarding, or showing Mr. Howe committing a crime or engaging in deceit. *See, e.g.*, *United States v. Skelos*, No. 15-cr-317-KMW, 2018 WL 2254538, at *7 (S.D.N.Y. May 17, 2018) (denying motion to quash subpoenas that concerned specific categories of evidence).

**III.    The Subpoena is a Good Faith Effort to Seek Admissible Evidence to Impeach Mr. Howe and Disprove Substantive Allegations.**

"Criminal defendants have the right to 'put before a jury evidence that might influence the determination of guilt.' To effect this right, a defendant must have the ability to obtain that evidence." *Tucker*, 249 F.R.D. at 65 (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987)). Obtaining evidence under Rule 17 does not require the requested materials to be presented in evidence at trial. Rather, it is sufficient that the subpoena represent a "good-faith effort" to obtain evidence. *Rajaratnam*, 753 F. Supp. 2d at 320 n.1 (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)). In *Rajaratnam*, the court provided the following guidance:

---

[6] *See also Rajaratnam*, 753 F. Supp. 2d at 322 (finding requests for "[a]ll documents reflecting communications" between three named individuals and "any agent or employee" to satisfy *Nixon*); *United States v. Hunter*, 13 F. Supp. 2d 586, 594 (D. Vt. 1998) (finding that a subpoena requesting "[a]ny and all records" regarding the defendant to satisfy *Nixon*); *Vasquez*, 258 F.R.D. at 75 (finding that a request for "any and all" police records relating to three homicides to satisfy *Nixon*).

> [I]n the context of a subpoena to a third party to whom Rule 16 does not apply, requiring the defendant to specify precisely the documents he wants without knowing what they are borders on rendering Rule 17 a nullity.

*Id.* The Subpoena is a good faith effort to obtain relevant and admissible documents.

While the Government does not, at present, intend to Mr. Howe as a witness, his out-of-court statements will be the central feature of the Government's presentation both through the statements themselves and through the testimony of its other witnesses who will testify about events they learned solely through Mr. Howe. The Government has already designated well over 200 exhibits that were sent by, were received by, or otherwise mention Mr. Howe. Indeed, the Government's charges consistently reference conduct undertaken by Dr. Kaloyeros **and** Todd Howe. *See, e.g.*, Amended Trial Indictment ¶ 15, Dkt. No. 716-1 (June 9, 2018) (alleging that Howe and Kaloyeros "preselected" the preferred developers); *id.* ¶ 16 (alleging that Howe and Kaloyeros "provided secret information" to the developers). Dr. Kaloyeros must be permitted to counter these allegations by demonstrating that Mr. Howe is a serial liar who consistently misrepresented who he was and for whom he worked—including deceiving Dr. Kaloyeros. Mr. Howe has already demonstrated that his web of lies continued while on bail. Dr. Kaloyeros should be permitted to determine if Mr. Howe's dishonesty—after already violating his bail and cooperation agreement—has continued through his time in custody. The information sought by the Subpoena is directly relevant to that question.

Dr. Kaloyeros has a right to seek and admit impeachment evidence[7] to inform the jury that Mr. Howe was revealed in Rule 16 discovery and at the January trial to be "a congenital

---

[7] The Government also argues that Rule 17(c) subpoenas should not be used to obtain impeachment material. Motion at 5. The Government is wrong. Regardless of whether *Nixon* applies, impeachment evidence is properly subject to a Rule 17(c) trial subpoena that does not seek pretrial production. *See United States v. Silverman*, 745 F.2d 1386, 1397 (11th Cir. 1984) (affirming denial of motion to quash

liar" and a "con man,"[8] who poisons the understandings of anyone who relies upon him. When a hearsay statement of a co-conspirator is admitted into evidence, the co-conspirator's credibility may be attacked with "any impeachment evidence that would [have been] admissible had the declarant testified." *United States v. Uvino*, 590 F. Supp. 2d 372, 374 (E.D.N.Y. 2008) (quoting *United States v. Moskowitz*, 215 F.3d 265, 270 (2d Cir. 2000)). It would be a disservice to the jury if the Government were able to circumvent the question of Mr. Howe's credibility while simultaneously relying on witness statements based on Mr. Howe's statements in private conversations.

Furthermore, the documents and correspondence sought by Dr. Kaloyeros have relevancy beyond their impeachment value.[9] Given that Mr. Howe has broken his cooperation agreement, and the Government no longer seeks to call him, Dr. Kaloyeros has a good faith basis to believe that Mr. Howe's version of events is different from the story he needed to tell to qualify for cooperation credit. Admissions that Mr. Howe's previous allegations were false are material and exculpatory evidence tending to disprove claims initially made by Mr. Howe. *Cf. Martin*

---

Rule 17(c) subpoena for impeachment material returnable only at trial); *cf. United States v. LaRouche Campaign*, 841 F.2d 1176, 1180 (1st Cir. 1988) (affirming trial court's decision to compel even pre-trial production of impeachment evidence because the general testimony of the witness was already known). Impeachment materials are producible as soon as they become potentially admissible as evidence. *See United States v. Carollo*, No. 10-cr-654, 2012 WL 1195194, at *2 (S.D.N.Y. Apr. 9, 2012) ("Impeachment materials may be the proper subject of a subpoena . . . [because] the request can be for materials that will themselves **ripen** into admissible evidence."); *United States v. Seabrook*, No. 16-cr-467, 2017 WL 4838311, at *3 (S.D.N.Y. Oct. 23, 2017) ("[I]mpeachment evidence can be obtained by means of a Rule 17(c) subpoena at trial." (citing *United States v. Murray*, 297 F.2d 812, 821 (2d Cir. 1962)). Any evidence that would have been admissible on cross-examination is admissible to impeach Mr. Howe after the Court admits his out-of-court statements into evidence. Fed. R. Evid. 806. Impeachment evidence against Mr. Howe will be admissible – and therefore unarguably producible – almost immediately.

[8] Fred Lebrun, *Victory Hard to See Here*, *Albany Times Union* (June 9, 2018), https://www.timesunion.com/local/article/Fred-LeBrun-Victory-hard-to-see-here-12981459.php.

[9] Evidence is relevant if it has "any tendency to make the existence of any [material] fact . . . more probable or less probable than it would be without the evidence." *Old Chief v. United States*, 519 U.S. 172, 178 (1997) (citation omitted).

*Marietta,* 856 F.2d at 622 ("A subpoena of the [documents negotiating settlement with the government] is at least a good faith effort to acquire evidence . . . for a defense that Martin Marietta hung [defendant] out to dry while protecting its own interest."). In short, Dr. Kaloyeros has a right to seek and offer evidence tending to prove that Mr. Howe's version of events—adopted by the Government and its witnesses—was at odds with the truth. The Subpoena is a good faith effort to gather that evidence.

**IV.     Conclusion**

For the forgoing reasons, Dr. Kaloyeros respectfully requests that the Court direct MCC and Dr. Kaloyeros to meet and confer to resolve any burden issues; deny the motion to quash; or modify the Subpoena as proposed above.

Respectfully submitted,

/s/ Michael C. Miller
Reid Weingarten
Michael C. Miller
Michael G. Scavelli
Katherine Dubyak
David Hirsch
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

*Counsel for Alain Kaloyeros*

Dated: June 12, 2018