Michael C. Miller
212 506 3955
mmiller@steptoe.com
1114 Avenue of the Americas
New York, NY 10036
212 506 3900 main
www.steptoe.com



June 28, 2018

<u>Via ECF</u>

Hon. Valerie E. Caproni
United States District Court Judge
Southern District of New York
40 Foley Square
New York, NY 10007

      Re: *United States v. Percoco, et al.* **(Case No. 16-cr-776)**

Dear Judge Caproni:

      We write on behalf of Alain Kaloyeros to renew our request to exclude the New York State Procurement Guidelines ("NYS Guidelines"). The NYS Guidelines are inadmissible for three reasons. First, the NYS Guidelines did not apply to Fort Schuyler. Second, a statement that Fort Schuyler followed all *applicable* state procedures to the letter does not lay a foundation for the relevance of *inapplicable* state guidelines. The Government has categorically failed to offer any foundation that Dr. Kaloyeros mistakenly believed that the NYS Guidelines applied to Fort Schuyler. Third, any miniscule relevance is dwarfed by the risk of unfair prejudice from juror confusion or belief that these inapplicable guidelines should have applied.

**I.    THE NYS GUIDELINES DID NOT APPLY TO FORT SCHUYLER AND ARE THEREFORE IRRELEVANT.**

      The NYS Guidelines were established under State Finance Law § 161.d to guide the procurement decisions of "state agencies." N.Y. State Fin. Law § 161.d; *accord* NYS Guidelines at 1 (opening paragraph referencing only "New York State . . . agencies"); *id.* (second paragraph stating that the NYS Guidelines are designed to assist State agencies in making procurements"); *id.* (third paragraph referencing focus on agencies in both sentences); *id.* (fourth paragraph referencing "each agency"). Indeed the NYS Guidelines clearly state that they are "designed to . . . [e]nsure that the [procurement] results meet *agency* needs." *Id.* at 2 (emphasis in the original). "Agency" is defined in § 160.9 and in the NYS Guidelines Glossary to include only State departments, State boards, State commissions, State offices, and State institutions.[1] To include

---

[1] Needless to say, "state agency" is not defined to include private, not-for-profit corporations. "State agency" is even defined to exclude the State University of New York ("SUNY") to the extent SUNY "execute[s] contracts for construction and construction-related services contracts." *Id.*; N.Y. State Educ. Law § 355.5.a(ii). SUNY is also, however, empowered to establish and contract with "non-profit corporations organized by officers, employees, alumni or students of [SUNY] for the furtherance of its

Hon. Valerie E. Caproni
June 28, 2018
Page 2



Fort Schuyler within any of those categories would upend legislative intent and the entire regulatory scheme. *See Bordeleau v. State*, 960 N.E.2d 917, 921 (N.Y. 2011) (state-affiliated corporations are designed to permit procurement and non-procurement activities to proceed "free from restrictions otherwise applicable" to public agencies).[2] Fort Schuyler is not a state agency, therefore the NYS Guidelines do not apply.

Throughout the trial, multiple witnesses have confirmed that Fort Schuyler was set up specifically to avoid the onerous requirements placed on state agencies. For example, Dean Fuleihan testified that "the State of New York has used other types of entities for economic development purposes and other construction purposes. There are many public authorities around this state that are independent from normal state agency operations. [Fort Schuyler] is another vehicle by which the state was able to do these kind of developments." Tr. at 303 (June 19, 2018). He went on to agree that Fort Schuyler was "designed to be more flexible than a New York State agency might be." *Id.* at 304 ("It's fair to say that [Fort Schuyler's] rules and procedures . . . were unique to them and could not be done through a state agency."). Joseph Schell was more succinct, testifying to his own statement that "FSMC is not obligated by state rules on this procurement." Tr. at 968 (June 21, 2018); *see also* Andrew Kennedy Test., Tr. at 188-89 (June 18, 2018) (Fort Schuyler was not subject to the "SUNY procurement rules"; it was "a nonprofit private entity" that could establish "whatever procurement rules [it] wanted to"). Even more significantly, not one witness has testified that the NYS Guidelines applied to Fort Schuyler. That is because Fort Schuyler was not a state agency and the NYS Guidelines did not apply.

As this testimony makes clear, the NYS Guidelines are irrelevant. The Government cannot undo its previous appeals to that effect:

- "Allowing testimony about various procurement models, laws, regulations, and practices not even applicable to Fort Schuyler's RFP processes would ***only serve to confuse the jury***."

- "[T]he laws, regulations, customs, and practices surrounding private and public procurement procedures ***are irrelevant*** to the charges at issue."

---

objects and purposes." N.Y. State Educ. Law § 355.6. Fort Schuyler is two full layers away from being a "state agency."

[2] *See also Hunts Point Term. Prod. Coop. Ass'n v. N.Y.C. Econ. Dev. Corp.*, 36 A.D.3d 234, 246 (N.Y. Sup. Ct. App. Div. 2006) (because EDC is a not-for-profit corporation, not a public agency, it is not required to submit contracts for public bidding or required to treat bidders fairly); New York State Office of the State Comptroller, Municipal Use of Local Development Corporations and Other Private Entities at 1 (Apr. 2011), https://www.osc.state.ny.us/localgov/pubs/research/ldcreport.pdf (noting that local development corporations and similar entities, such as Fort Schuyler, are "not subject to public procurement laws that require certain contracts to be bid competitively"); Office of General Services, List of Covered Governmental Entities, https://www.ogs.state.ny.us/ACPL/advisoryCouncil/Entities.htm (listing the institutions that fall within the definition of "Governmental Entity" under State Finance Laws regarding procurement and ***not*** including either Fort Schuyler or Fuller Road) (originally published 2006, last visited June 27, 2018).

Hon. Valerie E. Caproni
June 28, 2018
Page 3



- "[T]he question of whether Fort Schuyler, as a private entity, was free to disregard public procurement rules in managing its RFP processes *is irrelevant* in determining the defendants' guilt."

- "The defendants have been charged with participating in a wire fraud conspiracy, *not* a procurement fraud conspiracy."

Letter Mot. to Preclude Defs.' Experts at 5, Dkt. No. 668 (May 21, 2018); Gov't Letter Opp'n to Mot. to Preclude Rebuttal Expert at 2, 4, Dkt. No. 688 (May 29, 2018) (emphases added).  These policies remain as irrelevant today as they were at the outset of trial.

**II.     DAVID DOYLE'S TESTIMONY DOES NOT MAKE THE NYS GUIDELINES RELEVANT.**

A statement (from Dr. Kaloyeros or otherwise) that SUNY Poly and Fort Schuyler followed all *applicable* laws "to the letter"[3] does not mean that Fort Schuyler followed *inapplicable* laws.

"The buying process is different for each type of organization in New York State and it is important that you understand which rules and regulations apply to you."  Office of General Services – Procurement Services, *Buying 101: Understanding New York State's Buying Process*, https://nyspro.ogs.ny.gov/content/buying-101.  When SUNY Poly ran procurements, it followed the applicable procurement rules in N.Y. State Educ. Law § 355.5 and § 355.6, among others.  Those rules, however, permit SUNY Poly to work with a not-for-profit corporation like Fort Schuyler, which—while subject to certain regulations from state-affiliated funding sources—is "not subject to public procurement laws that require certain contracts to be bid competitively."  New York State Office of the State Comptroller, Municipal Use of Local Development Corporations and Other Private Entities at 1 (Apr. 2011), https://www.osc.state.ny.us/localgov/ pubs/research/ldcreport.pdf.  A statement that Fort Schuyler followed New York law to the letter does not mean that Fort Schuyler went beyond the law; in fact, it means precisely the opposite.

It is clear from the face of the NYS Guidelines that Dr. Kaloyeros never intended to claim that Fort Schuyler followed the NYS Guidelines.  First and foremost, it is undisputed that Fort Schuyler did not follow the NYS Guidelines rendering any lie pointless.  Fort Schuyler did not advertise in the New York State Contract Reporter as state agencies are required to do under the publicly available NYS Guidelines.  Moreover, Fort Schuyler did not receive the requisite approval from the State Comptroller for a sole source procurement.  It is clear that neither Dr. Kaloyeros nor Fort Schuyler thought they were necessary because Fort Schuyler was not a state agency subject to the NYS Guidelines.

To lay a foundation for admission of the NYS Guidelines, the Government must offer proof that they were actually the subject of any statement from Dr. Kaloyeros to Mr. Doyle.  The statement in GX144R does not reference the NYS Guidelines directly or indirectly.  Neither did Mr. Doyle's testimony elucidate which rules Dr. Kaloyeros was allegedly referencing.  *Cf.* Tr. at

---
[3] GX 144R.

Hon. Valerie E. Caproni
June 28, 2018
Page 4



1835 (June 27, 2018) (discussing broadly that SUNY Poly follows unnamed rules and regulations without mention of what rules and regulations Fort Schuyler follows).  It is unclear whether the NYS Guidelines would be one of the rules and regulations applicable to SUNY Poly, *see* NYS Guidelines at 2 (excluding construction contracts covered by N.Y. State Educ. Law § 376), but it is absolutely clear that the rules and regulations applicable to SUNY Poly did not apply to Fort Schuyler.[4]  If those rules and regulations did apply to Fort Schuyler, then there would be no reason for Fort Schuyler's existence.

Until the Government adduces testimony laying a foundation that Dr. Kaloyeros specifically intended to represent that Fort Schuyler complied with the NYS Guidelines—not the overwhelming sea of other rules and regulations applicable to a SUNY-affiliated corporation—the NYS Guidelines are irrelevant and inadmissible.

**III.  THE RISK OF UNFAIR PREJUDICE DWARFS ANY *DE MINIMIS* RELEVANCE.**

Even if Dr. Kaloyeros had told David Doyle that Fort Schuyler followed the NYS Guidelines, his after-the-fact deceit would carry *de minimis* relevance.  The ease with which any state agency or member of the press could verify that Fort Schuyler did not, in fact, comply with the NYS Guidelines shows that Dr. Kaloyeros could not have been intending to hide something.

In contrast to the minimal probative value, the unfair prejudice of inapplicable guidelines is real and immediate.  The inapplicable NYS Guidelines will appeal to jurors who believe that similar rules **should** have applied to Fort Schuyler.  The confusion and prejudice will be profound and incurable.  The Second Circuit held earlier this year that admission of a witness's undisputedly mistaken understanding has "[a]t best . . . a high probability of confusing the jury" despite any limiting instruction.  *United States v. Litvak*, 889 F.3d 56, 69 (2d Cir. 2018).  In *Litvak*, the district court permitted an alleged fraud victim to testify to his mistaken understanding that the defendant was his agent, which would make him subject to certain rules.  *Id.* at 68.  It was undisputed that the defendant was not the victim's agent and not subject to an agent's duties.  *Id.* at 69.  The Second Circuit vacated the resulting conviction—despite a limiting instruction that no agency relationship existed—because admitting the mistaken belief was an abuse of discretion under Rule 403.  *Id.*  While the best-case scenario was jury confusion, the court also noted that the mistaken belief could "mislead the jury" into convicting based on inapplicable evidence.  *Id.* (noting that an unreasonable belief is not permissible evidence of materiality in securities fraud prosecution).  *Litvak* holds that an inapplicable relationship and its consequent inapplicable duties are not admissible under Rule 403.  The prejudicial effect is only amplified when the mistaken party is the Defendant himself.[5]

---

[4] *See* Andrew Kennedy Test., Tr. at 188 (June 18, 2018) ("Q. Okay. And there are actually SUNY procurement rules as well, isn't that true? A. Correct. Q. But for a private entity, it's up to the board to establish its own rules, correct? A. Correct.").

[5] As noted above, Dr. Kaloyeros did not think that Fort Schuyler was bound by the NYS Guidelines. Even if Dr. Kaloyeros did have that misconception when speaking to Mr. Doyle, however, subjecting Dr.

Hon. Valerie E. Caproni
June 28, 2018
Page 5



   Further compounding the confusion of the jury is the lack of any specificity as to *which* aspects of the inapplicable guidelines Dr. Kaloyeros was supposedly referencing. This scattershot approach to presenting evidence about procurement policies has already been permitted once through the Government's reliance on the inapplicable Research Foundation procurement policy. The Government has taken claims of general reliance on a policy and seized upon parts of the policy that could not possibly be subject to general reliance such as the policy's purpose. The Government should not be permitted to compound the initial error of adducing testimony about one set of inapplicable procurement rules by adding another equally inapplicable set of Guidelines.

* * *

   Based on the foregoing, Dr. Kaloyeros respectfully requests that the Court strike the NYS Guidelines from evidence and Mr. Doyle's testimony related thereto.

                  Respectfully submitted,

                  *[signature]*

                  Michael C. Miller
                  *Counsel for Defendant Alain Kaloyeros*

---

Kaloyeros to the resulting prejudice of failing to adhere to inapplicable rules would disproportionately punish his lack of knowledge regarding which procurement rules did and did not apply.